**K.S.H., Petitioner/Respondent,**

v.

**D.J.H., Respondent/Appellant.**

**No. 63266.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 10, 1995.

Charles P. Todt, Charles P. Todt & Associates, St. Louis, for respondent/appellant.

Philip J. Ohlms, Malaine P. Hagemeier, Barklage, Barklage, Haywood & Brett, P.C., St. Charles, for petitioner/respondent.

KAROHL, Judge.

The dispute in this case involves Father's rights of temporary custody with his three sons. They are now nine, eight and six years of age. Father began the proceedings when he filed a motion requesting that Mother be held in contempt for intentional violation of his temporary custody rights granted in the September, 1990, dissolution decree. Mother filed a cross-motion for contempt for Father's failure to pay money awarded in the decree. Thereafter, she added a motion to modify the temporary custody provisions and requested the court to order Father "to have no further contact with the minor children unless under the direct supervision of the Division of Family Services at their offices." Father's parents filed a separate motion for visitation with their grandchildren. *See* § 452.400.3 RSMo Supp.1993. The court rejected Father's motion to modify; found Father in contempt, but, expressly ordered no sanction; denied the grandparents' motion for visitation; and, altered, but did not terminate, Father's temporary custody. Father appeals the modification of his temporary custody rights. We reverse and remand.

## THE DECREE OF DISSOLUTION AND ORIGINAL CUSTODY AWARD

The court entered a dissolution decree on September 24, 1990, after approving the parties' separation agreement. The provisions of the decree relevant to temporary custody are as follows:

> [Father] shall have temporary custody of the minor children each Sunday from noon until 8:00 P.M.;
>
> \*    \*    \*    \*    \*    \*
>
> The terms of the Marital Settlement Agreement are incorporated into this Decree of Dissolution and the parties ordered to perform them. These terms shall be enforceable by all remedies available for the enforcement of a judgment.

The provisions of the Marital Settlement Agreement relevant to temporary custody are as follows:

> 4. *CUSTODY OF MINOR CHILDREN*
> ... and the parties further agree that the Husband is to have the right of reasonable visitation and temporary custody each Sunday from 12:00 noon until 8:00 P.M., provided however, that said periods shall be supervised by husband's parents **AND SUBJECT TO THE RECOMMENDATIONS FOR FUTURE TEMPORARY**

CUSTODY AS RECOMMENDED IN PARAGRAPH 7 HEREIN.

\* \* \* \* \* \*

7. *COUNSELING:* The parties **AND [T.J.]** shall immediately begin a program of counselling with Rohen and Associates, 1 Westbury Square, St. Charles, MO. Said counselling [sic] shall be performed by a psychologist (Ph.D.) and shall address all issues pertaining to the parties and the children born of the marriage. Each party shall execute releases of information. The psychologist shall be directed to prepare written progress reports, with copies to be furnished to the Court, the Guardian ad Litem and the parties/their attorneys. The parties agree to attend said counselling [sic] and cooperate with the counsellor's recommendations **AS TO FUTURE TEMPORARY CUSTODY OF THE CHILDREN OF THIS MARRIAGE INCLUDING [T.J.].** Each party shall pay for any Psychological evaluation recommended for such party, and the balance of the counselling [sic] **COSTS SHALL BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

[The sections in bold print were added to the typed agreement and initialed by the parties].

### RELEVANT FACTS

Terrence M. Rohen of Rohen & Associates testified that he published a report in January, 1991, which recommended that supervised temporary custody was no longer necessary for the welfare of the three boys. Pursuant to this recommendation, Father attempted to see his boys on an unsupervised basis. Father testified that he had the children in his sole custody for a very limited period on exactly one occasion, during a 30 to 45 minute truck ride. This testimony was supported by his parents, who both testified that with the one exception they were present at all times after the dissolution to supervise temporary custody. However, T.J. indicated that sometimes Father would drop grandmother off, or that grandmother would watch T.V. or ride horses, leaving the boys alone with Father.

In her testimony, Mother admitted she had intentionally refused to comply with the recommendation of Rohen & Associates under the terms of the decree of dissolution. Mother rejected the interpretation that the custody agreement in the marital settlement agreement, when incorporated into the decree, authorized Rohen & Associates to cancel the requirement of supervised visitation with Father.

Furthermore, Mother admitted that on numerous occasions beginning on February 3, 1991, she withheld the children from even supervised visits with their Father. She justified her actions on the basis of the children's complaints of abuse and on the basis of advice from the guardian ad litem. She did not attribute such advice to her own counsel. She never sought medical confirmation of acts of abuse. She never made any sexual abuse complaint to Father or his parents. She did not deliver the children to the juvenile court for protection as an alternative to complying with the decree. Father asked the court on February 14, 1991, to enforce the dissolution decree by a finding of contempt. Mother answered with her own contempt motion for unpaid child support.

Before and after the contempt motions, Mother made numerous reports of abuse by Father to the Division of Family Services (DFS) and to the guardian ad litem. DFS investigated for abuse in April 1990, February 1991, April 1991, August 1991 and May 1992. In each case DFS did not find abuse by Father, although it ultimately found "reason to suspect" abuse by an "unknown perpetrator."

Mother admitted she wrote a letter on July 8, 1991, to Father. Despite her representations to DFS and the guardian ad litem, described above, the letter never referred to any abuse of the boys after the September, 1990, decree. She stated "the time spent with you at your parents' is spoken very highly of by [the boys]." She also said "They love you all very much." She confirmed the truth of that statement in her testimony. She also said "They feel completely safe and comfortable coming there to visit." She acknowledged that what she wanted was to

keep the custody the way it was before, supervised.

On September 20, 1991, Mother filed a motion to modify the dissolution decree in order to eliminate Father's right to unsupervised visitation and his right to see the children under the supervision of their paternal grandparents. Her motion proposed supervision by DFS. The grandparents then moved to intervene. After a full evidentiary hearing, the court ruled in favor of Mother. Relevant portions of the court's order follow.

### MODIFICATION JUDGMENT ENTERED NOVEMBER 24, 1992

The Court specifically finds that a SAFE examination conducted by Dr. Norman Steele as reflected in Respondent's exhibits revealed physical findings consistent with sexual child abuse to [T.J.] and [B.Z.].

The Court finds that the children have consistently made reports to the guardian ad litem and to the Petitioner that the Respondent has been the party responsible for sexual abuse to the children.

\*  \*  \*  \*  \*  \*

That the grandparents, [E. and S.], testified that they did not believe Respondent engaged in any inappropriate conduct with the children and did not feel it necessary to supervise his conduct with the children.

Based on these findings the court entered the following orders relevant to the subject of temporary custody:

2. The Court finds that the exhibits introduced into evidence particularly the medical report of Dr. Steele is sufficient to find that there is reason to suspect the Respondent of inappropriate conduct with the children and that it is not in the best interest of the children that they be in the unsupervised custody of the Respondent or be visited by Respondent under the supervision of his parents (Intervenors).

The Court hereby denies grandparents' motion to enforce grandparents' rights and orders that they may enjoy such contact with the children during those periods of visitation as are herein after [sic] granted to the Respondent.

\*  \*  \*  \*  \*  \*

4. On Petitioner's Motion to Modify the Decree, the Court finds that the report of Dr. Steele and the children's conversations with Petitioner and the guardian ad litem constitute a continuing substantial change in circumstances coupled with the testimony of the paternal grandparents that Respondent shall have no right to temporary custody of these children. Respondent is hereby granted the following rights of visitation to the children. These periods of visitation shall occur only if supervised by Respondent's brother and sister-in-law, [R. and D.]. Those periods of visitation are as follows: Every Sunday from 12:00 noon to 8:00 p.m. and additional periods of holiday visits . . . .

\*  \*  \*  \*  \*  \*

5. All periods of visitation as hereinbefore set forth shall be conditioned upon the complete and total supervision by Respondent's brother and sister-in-law, [R. and D.]. At no time shall Respondent be left alone with these children. In the event that Respondent's brother and sister-in-law shall not be willing to Respondent shall be required to obtain satisfactory substitute supervisors. Said substitute shall be individuals acceptable to Petitioner who shall not unreasonably withhold her consent.

\*  \*  \*  \*  \*  \*

8. The Court orders that Petitioner, Respondent and the minor children shall engage in a program of counselling [sic] at Rohen & Associates.

### ISSUES

On appeal Father contends there was no substantial evidence to support a modification of the temporary custody order in that the evidence does not support the finding of sexual abuse, and that the court order lacks the necessary finding required by § 452.400.2 RSMo Supp.1993, which dictates that restrictions on visitation rights must be accompanied by a finding that the children are endangered or their emotional develop-

ment is impaired by compliance with the existing decree. Father also claims the court erred in not disqualifying the guardian ad litem on motion and in crediting the testimony of the guardian ad litem about statements made to him by the children, because the guardian failed and refused to perform his duties objectively in compliance with § 452.423 RSMo Supp.1993.

## ANALYSIS

In order to modify a prior custody decree the court must find: . . . upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. Section 452.410 RSMo Supp.1993.

Therefore, it is incumbent upon the trial court to find both a change in circumstances and that the modification is in the children's best interest. We review in accordance with Rule 73.01(c) as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ The trial court's finding of a change in circumstances is flawed. The trial court found "the report of Dr. Steele and the children's conversations with [Mother] and the guardian ad litem constitute a continuing substantial change in circumstances *coupled with the testimony of the paternal grandparents that Respondent shall have no right to temporary custody of these children.*"

First, Dr. Steele's report is insufficient to support the finding of a change in circumstances. Dr. Steele did not testify in this matter. His "report" was a two page letter introduced by Father as part of a larger DFS administrative file. Also in the administrative file were three SAFE exam forms, one for each boy examined by Dr. Steele. In the "FINDINGS AND FOLLOW-UP" sections of T.J.'s and B.Z.'s forms, Dr. Steele found "Physical findings present. Complete evaluation consistent with sexual assault." N.L.'s form reveals, "No physical findings. History and/or behavioral indicators consistent with sexual assault." At best, these forms reveal only a consistency with sexual

abuse, not a positive or negative finding of abuse.

The report concludes: "In summary, *none of the recognized perirectal findings in these boys (see above) are diagnostic of sexual abuse.* These findings may be seen in non abused children. When a history, consistent with sexual abuse, is reported, these findings can be used to support this history." (Our emphasis). Dr. Steele's report, alone, can neither confirm nor rule out sexual abuse.

As stated by Dr. Steele, when an exam cannot confirm abuse, the history, as told by the children, becomes the most important factor. We find it disturbing that the court did not interview the children in this matter. Rather, it chose to credit the hearsay testimony of Mother and the guardian ad litem. It also chose to ignore the testimony of experienced DFS workers who found the children's testimony to be conflicting, rehearsed, and lacking in detail.

Second, the record reveals that the paternal grandparents gave no testimony to support this finding. They told the court the exact opposite message. We cannot reconcile the court's finding that grandparents would deny temporary custody to Father with another finding in the judgment that grandparents "testified that they did not believe [Father] engaged in any inappropriate conduct with the children and did not feel it necessary to supervise his conduct with the children." Reliance on this finding is reversible error.

Furthermore, a court "shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." Section 452.400.2 RSMo Supp. 1993. These findings are absent from the modification order.

■ Mother argues these additional findings of health endangerment or emotional impairment are not necessary because the court's modification order does not "restrict" Father's visitation rights. In support, she cites *In re Marriage of Amos*, 843 S.W.2d 946 (Mo.App.S.D.1992). In *Amos*, the Southern District held that reducing the number of

days of visitation does not require a finding of endangerment or emotional impairment:

Although the instant order terminated Mike's Tuesday and Thursday visitation rights, it did not disturb his other visitation rights [on the weekends and during summer and holidays]. . As to the rights left intact, the trial court did not impose any restrictions. *Id.* at 950.

While we acknowledge that the interpretation of § 452.400.2 in *Amos* is highly counterintuitive, even under this interpretation the modification in this case would be considered a restriction. The rights of temporary custody which mother claims were "left intact" are burdened by a new restriction which was not agreed to in the marital settlement agreement and was not part of the dissolution decree. The restriction, therefore, requires the finding mandated by § 452.400.2.

█ While the trial court did not specifically make a finding as required by § 452.400.2, we interpret the following language as an attempt to find that the children were imperiled: "the exhibits ... is [sic] sufficient to find that there is reason to suspect the Respondent of inappropriate conduct with the children...." However, even if we were to overlook the court's failure to make the finding in express statutory language, we still could not call this an equivalent substitute. What the court found was "reason to suspect," not endangerment of physical health or impairment of emotional development of the children. The mere suspicion of endangerment or impairment is not enough to support the restriction of visitation rights. In Missouri, absent a finding otherwise, the legislature presumes that it is best for children to enjoy reasonable visitation with both parents. Section 452.400 RSMo Supp.1993. Accordingly, we agree with Father that the court has not made the required finding of endangerment or impairment to justify restricting his visits with the children.

█ In Father's final claim of error, he contends the guardian ad litem refused to contact witnesses with relevant evidence; the guardian held predetermined opinions regarding the factual disputes; and the guardian, as an assistant prosecuting attorney, had previously prosecuted Father for a traffic accident involving a St. Charles County Sheriff's vehicle. Therefore, he claims the guardian's activities proved a dereliction of duty under § 452.423 RSMo Supp.1993, and a disqualifying conflict of interest.

The guardian ad litem did not deny that he had advised Mother to withhold the children and to deny Father even the supervised temporary custody authorized by the divorce decree. He made similar statements to Father. It is not clear why the guardian, a lawyer, would give advice to a litigant to violate a court order when he could have advised her to deliver the children to the protection of the juvenile court. Nor is it clear how a guardian can determine the best interests of a child without interviewing the child's father, grandparents, and other close relatives. Section 452.423.2 RSMo Supp. 1993. Upon remand, the court may consider whether a replacement guardian would be helpful. We hold, however, that the court did not abuse its discretion in denying Father's motion to remove the guardian on the grounds stated in his motion.

Because the interests of small children are at stake in this matter, and because we cannot confidently pronounce a final disposition based on the record presented, we remand to the trial court to allow it to reconsider Mother's motion to modify as to the temporary custody rights of Father. Because we remand, the following additional observations are appropriate.

First, the court approved the services of Rohen & Associates by ordering the parties to continue counseling at Rohen & Associates. The parties had agreed to that service before the dissolution. The order appears to affirm a confidence in the services of Rohen & Associates. However, the court's rejection of the unsupervised custody recommendation of Rohen & Associates appears inconsistent with the continued counseling recommendation.

Second, the court allows Father and grandparents temporary custody at designated times under the supervision of R. and D., Father's brother and sister-in-law. Although both testified at trial, neither R. nor D. have

entered their appearance or agreed to assume the monumental task of supervising the children and hosting Father and the grandparents every Sunday from 12:00 noon until 8:00 p.m. and all the other times set forth in the modification order.

Finally, as an alternative to R. and D.'s services, the order assumes that Father could designate a substitute, subject to Mother's approval. It is not clear how that designation and approval procedure would be possible for parents who have not agreed on any temporary custody arrangement for more than four years since the dissolution decree.

■ We reverse and remand for reconsideration of Mother's motion to modify. The court will have the benefit of the trial transcript prepared for this appeal. However, because of the subject matter, the court is free to reopen and consider any additional evidence that the parties may choose to offer or that the court may require, including but not limited to an interview of the children by the court as warranted by law and the receipt of any medical evidence that may be relevant to the issue of the allegation of sexual abuse. Pending this reconsideration, we order that Father shall have only those supervised visitation and temporary custody rights as are contained in the original decree of dissolution, and we temporarily suspend the modification of temporary custody by Rohen & Associates' recommendation.

Father's motion to seal the record on appeal sustained.

Cause reversed and remanded.

SMITH, P.J., and WHITE, J., concur.