Carter G. BUSCHARDT, Appellant,

v.

Glenna Rae Buschardt JONES,
Respondent.

No. WD 55121.

Missouri Court of Appeals,
Western District.

March 31, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1999.

Application for Transfer Denied
June 29, 1999.

**793**

Nathalie C. Elliott, Richard L. Becker, Overland Park, Kansas, for appellant.

John R. Shank, Jr., Kansas City, MO, for respondent.

Before BRECKENRIDGE, C.J., HANNA and ELLIS, JJ.

BRECKENRIDGE, Judge.

Carter Buschardt appeals from an October 10, 1997 judgment modifying custody, visitation and support of the child born of his marriage to Glenna Rae Buschardt, now Jones. The judgment continues the previous award of joint legal custody of the minor child, Stephanie Buschardt, to the parents, Mr. Buschardt and Ms. Jones, but transfers primary physical custody to Ms. Jones. The judgment also grants Ms. Jones's request to remove Stephanie from the state of Missouri to permanently reside in California. Child support was ordered to be paid by Mr. Buschardt to Ms. Jones in the amount of $165 per month pursuant to the Form 14 calculation. Mr. Buschardt was granted visitation from July 1 until August 15 of each year and half of all school holidays of seven or more days duration. Ms. Jones was ordered to make Stephanie available for telephone contact with Mr. Buschardt at least twice a week while Stephanie resides with her mother and vice versa when she resides with her father. Travel expenses were to be divided equally between Mr. Buschardt and Ms. Jones. The court further ordered that both parties are prohibited from having an adult of the opposite sex, to whom they are not lawfully wed or related, spend the night with them during periods of custody or visitation.

Mr. Buschardt appeals the ruling of the trial court, arguing in his first point that the trial court's rulings as to custody and visitation resulted from the trial court's bias against Mr. Buschardt because of his living arrangements with Laura Schmidt, the woman with whom Mr. Buschardt lives, but to whom he is not lawfully mar-

ried or related. As his second and third points, Mr. Buschardt argues that the visitation restriction is not supported by substantial evidence that his living arrangements would endanger Stephanie's physical health or impair her emotional development and that the trial court erroneously applied the law regarding restrictions on non-custodial visitation. Fourth, Mr. Buschardt argues that the trial court erred in allowing Ms. Jones to relocate Stephanie to California because the ruling was against the weight of the evidence. Finally, Mr. Buschardt argues that the trial court erred by transferring custody to Ms. Jones because the court erroneously applied the law and transferred custody based solely on the gender of the mother and child and because Mr. Buschardt was cohabitating with Ms. Schmidt.

The trial court abused its discretion in sustaining Ms. Jones's request to remove Stephanie from the state, restricting Mr. Buschardt's visitation with Stephanie, and awarding primary physical custody to Ms. Jones. Therefore, the provisions pertaining to these issues, as well as the order for child support, are reversed. The cause is remanded for entry of a judgment denying Ms. Jones's request to move Stephanie to California and retrial of the issues of custody, visitation and support. Because the trial judge's oral pronouncement of his decision created an appearance that the judge's views had caused him to prejudge the case and precluded him from properly weighing the evidence, the trial judge is ordered to recuse himself on remand and a different judge should be assigned to retry the matter.

### FACTUAL AND PROCEDURAL BACKGROUND

Ms. Jones and Mr. Buschardt were divorced on May 6, 1993. In their settlement agreement, the parties agreed to share joint legal and physical custody of their daughter, Stephanie. No child support was ordered because the parties agreed that each would pay certain expenses for their daughter. Both parents kept a residence in Kansas City, Missouri, from the time of the original proceeding until the events leading to the modification proceedings.

During the period after the divorce, Mr. Buschardt began dating Laura Schmidt. Sometime later, Mr. Buschardt and Ms. Schmidt decided to combine their households and live together, but they chose to remain unmarried. Likewise, subsequent to the divorce, Ms. Jones developed a relationship with Phillip Jones, a pilot with American Airlines. Ms. Jones and Mr. Jones were married, five months later. They resided in Ms. Jones's apartment in Kansas City, but Mr. Jones kept his primary residence in San Diego, California.

From the time of the divorce, the parents strictly observed the terms of the physical custody arrangement, with Ms. Jones having custody of Stephanie when she was in Kansas City and Mr. Buschardt having the child when Ms. Jones was away working as a flight attendant. This arrangement resulted in the child spending approximately fifty percent of her time with each parent. There was conflicting testimony as to the success of the arrangement in the early years following the divorce, but the evidence showed that, in the years immediately preceding the modification action, the arrangement presented problems. The dissension between Mr. Buschardt and Ms. Jones arose primarily over the transfer of custody of Stephanie between the two. Other sources of friction were that Mr. Buschardt thought that Ms. Jones was lax in her care of Stephanie, and Ms. Jones testified that Mr. Buschardt had angry outbursts and was verbally abusive to her in Stephanie's presence. The incidents that they testified to were very sporadic, however.

It was in the months immediately before the initiation of the modification proceedings that the relationship between Ms. Jones and Mr. Buschardt really deteriorated. Problems occurred because, under the

parties' literal interpretation of the custody provisions of the decree of dissolution, Ms. Jones would have Stephanie in her physical custody whenever she was in town. She would deliver Stephanie to Mr. Buschardt's residence on her way to the airport, and she would pick up Stephanie as soon as she arrived in town. Because Ms. Jones was a flight attendant, her schedule was subject to frequent change with little notice, and the parties were not always successful in communicating about the changes. When Ms. Jones worked "reserve months" three months of the year, she was at the airline's mercy and could be given as little as two hours notice before a flight. At times Ms. Jones's schedule would cause her to be significantly late or arrive significantly early and that would occur with little to no notice on her part. Possibly three to four times a month, Ms. Jones would pick Stephanie up after her 8:30 p.m. bedtime. Mr. Buschardt and Ms. Schmidt felt they were left to conform Stephanie's and their schedules to Ms. Jones's schedule. Mr. Buschardt became angry and frustrated by the uncertainty and, on May 2, 1997, he filed a motion to modify the custody provisions of the prior decree, requesting that the trial court establish a specific schedule for transfers of Stephanie's physical custody between the parties.

Three days later, on May 5, 1997, Mr. Buschardt and Mr. Jones had an altercation when the Joneses were returning Stephanie to Mr. Buschardt's home at approximately 5:30 a.m. Mr. Jones claimed that Mr. Buschardt met him at the door yelling profanity and slammed the door in his face as he was handing Stephanie's bags to her in the house. Ms. Schmidt testified that Mr. Buschardt was angry that the Joneses were delivering Stephanie at 5:30 a.m. and used profanity when he answered the door, but that Mr. Jones exploded in response, grabbing Mr. Buschardt and threatening to kill him. In response to the incident, Mr. Buschardt filed an adult abuse petition requesting a restraining order against Mr. Jones. On June 4, 1997, within a month of the altercation between Mr. Buschardt and Mr. Jones, Ms. Jones moved with Stephanie to Mr. Jones's house in California. She did not give Mr. Buschardt any prior notice and she did not seek his permission, although they had joint custody and shared physical custody equally. On June 19, 1997, Ms. Jones filed a cross-motion to modify seeking permission to relocate Stephanie to California, sole custody of Stephanie, the establishment of a visitation schedule for Mr. Buschardt and an order that Mr. Buschardt pay child support. Mr. Buschardt then filed an amended motion to modify requesting that he be granted sole custody and child support.

At trial, the court considered the parties' motions to modify and Mr. Buschardt's adult abuse petition, in a consolidated hearing. Various witnesses testified as to the parenting capabilities of Mr. Buschardt and Ms. Jones. Testimony was also received regarding the relationship each parent shared with the child and the lifestyle each parent could provide for her. In ruling on the adult abuse matter, the trial court stated he did not know who was telling the truth about the May 5th incident, but the petition was denied because the evidence did not demonstrate a cause of action for stalking, as alleged, under the adult abuse statute. In its ruling on the motions to modify, the trial court found "it [was] a very close call" comparing the conduct of the parties with the statutory criteria. The trial court found the evidence on removal from the state fairly even as well. However, the trial court found that "overall, it's in the best interest of Stephanie to be with Mom." Mr. Buschardt filed a timely appeal to this court alleging the trial court was biased and that it erred in determining Stephanie's best interests, in granting permission for Stephanie to be removed from the state, and in restricting his visitation with the child.

### STANDARD OF REVIEW

The standard of review in this case is established by *Murphy v. Carron,*

536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Dover v. Dover*, 930 S.W.2d 491, 494 (Mo.App.1996). An appellate court should set aside a judgment as "against the weight of the evidence" if it firmly believes that the judgment is wrong. *Flathers v. Flathers*, 948 S.W.2d 463, 465 (Mo.App.1997). " 'Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not determined by mathematics, but on its effect in inducing belief.' " *Id.* (quoting *Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.*, 931 S.W.2d 909, 918 n. 18 (Mo.App.1996)). There is the presumption that the best interests of the child motivate the trial court. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App.1996). Therefore, the trial court's assessment of what serves the child's best interests will be affirmed unless the appellate court is firmly convinced that the child's welfare requires some other disposition. *Cook v. Warren*, 916 S.W.2d 409, 412 (Mo.App.1996). Where evidence on an issue is disputed, or where there is contradictory evidence, this court defers to the trial court's credibility determinations. *Hankins*, 920 S.W.2d at 188. The trial court's determination is given greater deference in child custody matters than in other cases. *Bomar v. Kurtz*, 951 S.W.2d 657, 659 (Mo.App.1997).

## JUDGMENT PERMITTING RELOCATION AND MODIFYING CUSTODY AND VISITATION PROVISIONS IS AGAINST THE WEIGHT OF THE EVIDENCE

### Relocation

■ Mr. Buschardt argues that the trial court erred in allowing Ms. Jones to relocate Stephanie to California, because the ruling was against the weight of the evidence. Mr. Buschardt contends that the move was necessitated only by the Joneses' desire to reside in California and that neither Ms. Jones or her husband were required by their employment to live there. Ms. Jones maintains that the weight of the evidence supports the trial court's finding that the move is in Stephanie's best interests.

■ With regard to a motion for permission to remove a child from the state of Missouri, the courts employ a four-factor test to determine if the move serves the child's best interests. *Puricelli v. Puricelli*, 969 S.W.2d 289, 296 (Mo.App.1998). The factors to be considered are:

(1) whether the prospective advantages of the move will improve the general quality of life for the parent and the child; (2) the integrity of the custodial parent's motives in relocating; (3) the integrity of the noncustodial parent's motives for opposing the relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support; and (4) the realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

*Id.* Each case is decided on its facts, with the welfare of the child remaining the primary concern. *McElroy v. McElroy*, 910 S.W.2d 798, 802 (Mo.App.1995).

The first consideration is whether the prospective advantages of the move will improve the general quality of life for the parent and the child. Ms. Jones testified that there were no circumstances that required her to live in California because her job as a flight attendant is based in Chicago, Illinois, and her husband's job as a pilot is based in Miami, Florida. Economically, there would be no difference in the family's income whether they lived in California or Missouri. Ms. Jones emphasizes, however, that their housing would improve significantly because they moved from Ms. Jones's apartment in Kansas City to Mr.

Jones's "beautiful" home in California which had a swimming pool.

Other than the enjoying the amenities of Mr. Jones's home, the evidence did not indicate that there were any other benefits to Stephanie or Ms. Jones from living in California. Ms. Jones and Stephanie had no family in California and no connection to the state other than Mr. Jones. Mr. Jones had lived in California for eleven years. He testified that there was no reason that he or Ms. Jones had to live in California, and it was his desire to live with his wife and Stephanie. Mr. Jones testified that he had relatives in California, but he did not identify those relatives or the nature of their relationship. On the other hand, Stephanie had lived her entire life in Platte County. Her maternal grandparents lived in Missouri and Mr. Buschardt took her to see them about every six weeks while she resided in Kansas City.

One advantage of moving cited by Ms. Jones was that she would reduce her work schedule to two days per month once the family moved to California. However, there is no evidence that she would not be able to make a similar adjustment if she remained in Kansas City.

■ The weight of the evidence under this factor shows that the Joneses desired to move to California but they did not need to relocate. A mere desire to relocate is not sufficient to establish that the parent and child will enjoy a better quality of life because of the move. *Puricelli,* 969 S.W.2d at 297. While the evidence indicates that Ms. Jones and Stephanie would enjoy living in Mr. Jones's nice home in California, it does not indicate that it would be a substantial improvement over the quality of life they are capable of enjoying in Kansas City. Further, the evidence does not show that Stephanie or Ms. Jones would experience a decline in their quality of life by remaining in Missouri. *See Carter v. Schilb,* 877 S.W.2d 665, 667 (Mo.App.1994). The first factor weighs against allowing the move. The second factor is the integrity of the custodial parent's motives in relocating. Ms. Jones's motive in moving is clearly stated in her brief. She admits that her decision to move to California was based on her desire to limit Stephanie's exposure to her father. She justifies this motive by stating that it is necessary to protect Stephanie from Mr. Buschardt's violent temper and his hostility toward Ms. Jones and her husband. In addition, Mr. Jones testified that he and Ms. Jones solidified their decision to move to California after the May 5, 1997, altercation. He stated that the move to California was beneficial because it would get Stephanie away from her father. He thought Stephanie needed to be removed from her father because he and Ms. Jones thought it was "impossible to deal with Mr. Buschardt in any reasonable manner." This type of motive for relocating the child, without evidence supporting the need to remove the child from her father, does not support the relocation. There is no evidence justifying Ms. Jones's claim that the move is necessary to "protect" Stephanie. This factor weighs against relocation.

The third factor we must consider examines the integrity of the noncustodial parent's motives for opposing the relocation, and the extent to which it is intended to secure a financial advantage with respect to continuing child support. Ms. Jones argues that Mr. Buschardt has dishonest motives in opposing the move, in that he only wants to minimize Stephanie's contact with Ms. Jones. There is no evidence in the record to support this claim. While it is true that Ms. Jones would have greater time with Stephanie in California than in Kansas City, that is a function of the fact that the distance would prevent Mr. Buschardt from exercising his right to substantial contact with Stephanie. By default, Ms. Jones would have Stephanie in her custody the majority of the time. Mr. Buschardt's desire to preserve the close relationship he has established with Stephanie does not evidence an improper mo-

tive. Testimony established that Stephanie previously spent approximately fifty percent of her time with Mr. Buschardt. His job permitted him to be home during the day and he chauffeured Stephanie and Ms. Schmidt's children to their school and activities. There is nothing untoward in Mr. Buschardt's desire to maintain the relationship he has shared with his daughter and not have her moved over a thousand miles away.

Nor is there evidence to indicate that Mr. Buschardt is opposing the move to secure a financial advantage. Prior to the judgment of modification, Mr. Buschardt was ordered to pay a portion of Stephanie's expenses rather than monthly child support. Ms. Jones presented no evidence that the expenses Mr. Buschardt was obligated to pay would be increased with the move. In the judgment of modification, the trial court instituted a $176 monthly child support payment by Mr. Buschardt. There is no evidence indicating that the amount of child support would be less if Stephanie remained in Kansas City or that Mr. Buschardt is contesting this move to reduce his child support obligation. This factor weighs against allowing the relocation.

Fourth, we must consider whether there exists a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted. In granting Ms. Jones's request to relocate Stephanie, the court reduced Mr. Buschardt's visitation to one-half of school vacations over seven days, six weeks in the summer and reasonable visitation any time Mr. Buschardt is in California. In the past, Mr. Buschardt has had custody of Stephanie at least fifty percent of the time and has been an active participant in Stephanie's life. If the relocation were allowed, he would see Stephanie infrequently and be unable to continue participating in her school and activities. The visitation schedule arrived at by the court is not adequate to preserve the rela-

tionship Mr. Buschardt and Stephanie have established. *See Puricelli,* 969 S.W.2d at 297. Awarding more visitation is a questionable solution, as the travel required is likely to be burdensome on Stephanie and interfere with her activities. See Carter, 877 S.W.2d at 668. In addition, Ms. Jones's desire to minimize Mr. Buschardt's contact with Stephanie makes it unlikely that she will facilitate any additional visitation for Mr. Buschardt. Because there does not appear to be a realistic possibility that the visitation could be arranged to preserve and foster Stephanie's relationship with her father if she moved to California, the fourth factor weighs against relocation.

Our review of the undisputed evidence shows that the trial court erred in finding that Stephanie's best interest would be served by moving to California because that ruling is against the weight of the evidence. The evidence shows that Stephanie has few contacts with California and the sole benefit to her is that she is living in a nicer house. There is no other expectation of an enhanced financial or social situation. While Ms. Jones expected to change her work schedule to have more time to attend to Stephanie's needs, the same is possible in Missouri. Stephanie has a close relationship with her father that would be strained by the move and Ms. Jones's motives for removing her are questionable at best. Even under the deferential standard afforded to the trial court's decisions regarding child custody, we hold that the evidence does not support a finding that Stephanie's best interests would be served by relocating to California. Therefore, the trial court abused its discretion in granting Ms. Jones's request, as the decision was against the weight of the evidence.

### Restriction on Visitation

■ Mr. Buschardt argues that the trial court erred in restricting his visitation to prohibit him from exercising his rights of overnight temporary custody or visitation

while Ms. Schmidt is residing in the house. The order states, "Both parties are prohibited from having an adult of the opposite sex to whom they are not lawfully wed or related to [sic] spending the night with them during periods of custody or visitation." Mr. Buschardt claims that the trial court erred because it did not make a finding that Stephanie's physical health would be endangered or that her emotional development would be impaired by Ms. Schmidt being present during overnight custody or visitation periods. He further contends that the evidence does not support such a finding in this case. Ms. Jones argues that the trial court's ruling indicates that the judge believed Stephanie's moral development would be impaired by exposure to Mr. Buschardt and Ms. Schmidt's relationship and that the evidence supports such a finding.

■■■■ Section 452.400.2, RSMo Cum. Supp.1998, governs the modification of visitation rights. The statute states, "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development." A restriction on visitation in a modification order is a requirement which burdens visitation that was not present in the original order or separation agreement. *K.S.H. v. D.J.H.*, 891 S.W.2d 144, 149 (Mo.App.1995). "The endangerment-impairment standard is the same for the court's either ordering supervised visitation or restricting visitation." *R.W.H. v. D.M.H.*, 898 S.W.2d 144, 148 (Mo.App. 1995). The trial court ordinarily must make a finding that the child's emotional development will be impaired or the child is in physical danger before placing a restriction on the non-custodial parent's visitation. *J.L.S. v. D.K.S.*, 943 S.W.2d 766, 772 (Mo.App.1997). When the trial court fails to make an express finding of impairment or endangerment, the required finding may be inferred from the restriction placed on the visitation. *Id.*

There was no express finding in the judgment that visitation in the Buschardt–Schmidt household would be detrimental to Stephanie's physical or emotional development. Nevertheless, in the oral pronouncement of his decision, the trial court stated his belief that the fact that Mr. Buschardt and Ms. Schmidt were living together when they were unmarried was a bad example for Stephanie which would negatively influence Stephanie to consider such conduct in the future. In the course of his ruling, the trial judge chastised Mr. Buschardt and Ms. Schmidt about their relationship for the better part of six pages of the transcript. The only other criticism of Mr. Buschardt which could be gleaned from the record was the trial court's finding that the May 5th incident was a bad example of how a parent should behave, particularly because the incident occurred in Stephanie's presence. In making that statement, however, he indicated that he did not know whether Mr. Buschardt or Mr. Jones was responsible for the bad behavior. From the comments the judge made when issuing the ruling, we can infer that he found that Mr. Buschardt's cohabitation with Ms. Schmidt was likely to impair Stephanie's moral or emotional development, and the restriction was made on that basis.

■■■■ The relevant statutes do not make cohabitation a conclusive factor in determining visitation. Generally, moral misconduct is insufficient to deprive a parent of his or her right to continuing contact with his or her child, unless the misconduct is "so gross, promiscuous, open or coupled with other anti-social behavior as to directly affect the physical, mental, economic and social well-being of a child. . . ." *Humphrey v. Humphrey*, 888 S.W.2d 342, 346 (Mo.App.1994). "The issue is not condemnation or approval of a moral standard but whether the conduct is detrimental to the child's welfare." *Bomar*, 951 S.W.2d at 661 (quoting *In re Marriage of Newber-*

*ry*, 745 S.W.2d 796, 797 (Mo.App.1988)). The record must support a finding that "the parent's conduct has had or will have an adverse impact on the child." *Mobley v. Phillips*, 942 S.W.2d 399, 402 (Mo.App. 1997). The effect of cohabitation, like any other factor, must be determined on a case-by-case basis, always with the purpose in mind of determining the best interests of the children. *See In Interest of L.W.F.*, 818 S.W.2d 727, 734 (Mo.App. 1991).

Initially, we note that the evidence here indicates that neither parent in this case had strong convictions against cohabitation. Stephanie was present in Mr. Buschardt and Ms. Schmidt's home over fifty percent of the time during the last two years, but Ms. Jones did not manifest any objection to the living arrangements until Mr. Buschardt filed a motion requesting a modification to establish a specific schedule of visitation. The first time she asserted an objection to Mr. Buschardt's living arrangement was in her motion for temporary custody, filed after Mr. Buschardt requested temporary custody in his own motion. In fact, Ms. Jones testified at trial that she "was grateful" that Mr. Buschardt had a woman like Laura Schmidt in his life to help out with Stephanie. Concerning her own circumstances, Ms. Jones testified that she had allowed her former fiancé to sleep with her when he spent a night at her apartment during their engagement. She further testified that she had developed a relationship with Mr. Jones two months after breaking her engagement to her previous fiancé and she married Mr. Jones five months later. The marriage was Ms. Jones's third and Mr. Jones's fourth. Although Ms. Jones argued the cohabitation issue at trial, the facts indicate that she did so as an opportunist, rather than as a true believer. *See Mobley*, 942 S.W.2d at 402 (Father's lifestyle and lack of previous objections to Mother's sexual "misconduct" incongruous with his reliance on the same as grounds for transfer of custody).

In reaching the decision to restrict visitation, the trial court considered the undisputed evidence that Mr. Buschardt and Ms. Schmidt met five years before the trial because their daughters were best friends at day care. Stephanie and Amanda, Ms. Schmidt's daughter, were four at the time. Mr. Buschardt and Ms. Schmidt originally socialized with their children as friends. Their relationship became romantic after a time, and they eventually decided to combine their households and live together. At the time of trial, they had lived together for over two years. They bought a house together and began to share a joint checking account. Ms. Schmidt was the primary breadwinner of the Buschardt–Schmidt household; Mr. Buschardt had only recently begun a career selling residential real estate. Ms. Schmidt's two children, Amanda, age nine at the time of trial, and Kevin, age ten at the time of trial, were present in the household every other week. Stephanie has a very close and loving relationship with Ms. Schmidt's children. Mr. Buschardt's flexible schedule from selling real estate permitted him to be home during the day and, during the week, he was primarily responsible for cooking, laundry and chauffeuring the children to their school and activities.

The trial judge stated on the record that, despite his belief that Ms. Schmidt was a responsible mother, he was entering an order restricting visitation if cohabitation occurs because he had a policy to include such a provision in every decree when cohabitation was an issue. A judge's decision on visitation is to be an exercise of the judge's discretion after properly weighing all the relevant facts, not a decision based on a predetermined policy. By having a policy that a certain provision is to be entered in every case, the judge abused his discretion by failing to exercise it. The primary consideration for the court in a custody or visitation determination is, without question, the best interest of the children." *See J.A.D. v. F.J.D.*, 978 S.W.2d 336, 339 (Mo. banc

1998). While a court can consider a parent's sexual or moral conduct to determine its detrimental effect on the mental, physical, economic or social well-being of a child, such conduct does not make a parent *ipso facto* unfit for visitation in this or any other case. *See id.* at 339–40.

In this case, the issue was whether it was in Stephanie's best interests to have visitation with her father limited simply because of his living arrangement with Ms. Schmidt. In making this determination, the trial court was required to consider that this was not a casual relationship, but a stable one which had worked well and been accepted by all concerned and had resulted in well-adjusted children, as well as all other facts set out above which demonstrate why visitation with her father would be in Stephanie's best interests. For the reasons stated above, in this particular case, a proper weighing of the evidence demonstrates that Stephanie's best interests are served by preserving and supporting the close relationship she has had with her father, even though his morals on the issue of cohabitation were found by the trial court to be flawed.

The trial court's order restricting Mr. Buschardt's visitation with Stephanie, so long as he continues to cohabitate with Ms. Schmidt, is reversed because it is an abuse of discretion to make this single factor dispositive of visitation in this case and because, on these facts, the provision is against the weight of the evidence. In addition, the entire visitation provision is reversed because the matter must be reconsidered in light of this court's reversal of judgment granting Ms. Jones permission to move Stephanie out of the state.

### Custody and Child Support

■ The trial court modified the prior decree of dissolution by awarding Ms. Jones sole physical custody of Stephanie. In light of our ruling that the trial court's policy on cohabitation resulted in an abuse of discretion in the order of visitation, the judgment of custody is suspect as well.

The court specifically stated that, "neither party shall have a companion of the opposite sex residing, staying, sleeping, or otherwise cohabitating with him or her, unless lawfully married as said to the person, while the child or children are in their care, custody and control." Since the court believed that a child should never be present in the home of a parent who cohabitates with a person of the opposite sex to whom the parent is not married or related, that belief would absolutely preclude the parent from having custody of the child as well. It, again, indicates a failure to exercise discretion and rule the issue based on a consideration of all the evidence of the individual case. Based on our finding that, under the facts of this case, Mr. Buschardt's living arrangements with Ms. Schmidt should not preclude his visitation with Stephanie, his relationship with Ms. Schmidt should likewise not render him *ipso facto* unfit for sharing or having sole custody of Stephanie. *See J.A.D.*, 978 S.W.2d at 339. The circumstances surrounding the trial court's ruling on the issue of custody support the finding that the trial court's policy on cohabitation caused an abuse of its discretion in rendering the order modifying custody. The judgment transferring sole custody of Stephanie to Ms. Jones is reversed.

The issue of custody should be retried on remand with the understanding that the cohabitation of Mr. Buschardt with Ms. Schmidt, while a factor which may be considered along with the other evidence, it is not a bar to custody by Mr. Buschardt. In ruling on the issue of custody, the trial court should consider whether the disagreements over the parties' literal interpretation of the prior custody order can be rectified by establishing a specific schedule for division of physical custody and whether a change of custody is even required under § 452.410.1, RSMo 1994. Section 452.410.1, RSMo 1994, provides, in pertinent part, as follows:

> [T]he court shall not modify a prior custody decree unless ... it finds, upon the

basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. Thus, the trial court must find both a change in circumstances and that the modification is necessary to serve Stephanie's best interests.

In addition, the award of child support to Ms. Jones resulted from the order that she have sole custody of Stephanie. Upon reversal of the order of custody, the judgment for child support should also be reversed and the issue considered on retrial.

### APPEARANCE OF PARTIALITY REQUIRES RECUSAL ON REMAND

▆▆▆▆ For the first time on appeal, Mr. Buschardt argues that the trial judge should have recused himself from the proceedings below. Although Mr. Buschardt did not raise his objections in the trial court, we will nonetheless entertain his claim. *See In re Marriage of Burroughs,* 691 S.W.2d 470, 473 (Mo.App.1985). In *Burroughs,* the court rejected the argument that because there was no pretrial application for a change of judge, the party was foreclosed from raising the issue for the first time on appeal. *Id.* The court stated that "[a]llegations of bias and prejudice of a trial judge toward a litigant have been considered on appeal where the aggrieved litigant filed an untimely application for change of judge immediately before trial, *In re Marriage of Frankel,* 550 S.W.2d 896, 898[5] (Mo.App.1977); where the aggrieved litigant filed an untimely application for change of judge during trial, *City of St. Louis v. Boos,* 503 S.W.2d 133, 136[7] (Mo.App.1973); where the aggrieved litigant filed a motion to disqualify the judge after the evidence had been completed, *Berry v. Berry,* 654 S.W.2d 155 (Mo.App.1983); and where the aggrieved litigant made no request at all for a change

of judge, *Rutlader v. Rutlader,* 411 S.W.2d 826, 831–32[9] (Mo.App.1967)." *Id.* Because Mr. Buschardt bases his claim of bias on the trial judge's comments made during the oral pronouncement of the court's ruling, it is apparent that the grounds for his claim were not known to him until that time, so his failure to raise the issue earlier was not dilatory.

With regard to the merits, Mr. Buschardt contends that the trial judge's comments made during the oral pronouncement of the court's ruling would cause a reasonable person to find that the court was not impartial and held a bias or prejudice against persons of the opposite sex who choose to cohabitate. Mr. Buschardt objects to the following statements of the trial judge:

> Both of you as parents, and you, ma'am [Mother], with your new husband, and you, sir [Father], with your companion, I—maybe I'm just old fashioned. But I don't agree with people living together without the benefit of matrimony. I understand that both you, Mr. Buschardt and your companion feel that you don't need marriage, and that you can have a committed relationship without it. Well, that may be possible, but this Court takes the opinion that it's a poor example for the child in this case. I think it's a poor example for her two children, myself, but that's my opinion. But I'm the guy that's hearing the case, so I'm going to tell you what I believe.

\* \* \*

> And I'm sure that you and your companion will not like this, Mr. Buschardt. But this is—*I make this order in ever* (sic) *case when the issue is presented to me.* I'm not singling you and her out. In fact, I like her very much. She's a nice appearing witness. She seems to be a very responsible mother, except on the one issue that I disagreed with you two about. But neither party shall have a companion of the opposite sex residing, staying, sleeping, or otherwise co-

habiting with him or her, unless lawfully married as said to the person, while the child or children are in their care, custody and control.

In other words, I'm not ordering you and your conduct with her, you do whatever you want to do. But if the child's in your care, custody and control, I didn't say anything Monday, but I'm telling you today, that as far as I'm concerned, the child—the mother does not have to allow the child to visit you if you remain in an unmarried relationship with this lady. And as much as I like the lady from her testimony, I'm sorry. That's my—That's my order, and that's my decision. I think it's a bad example for your daughter. I don't want your daughter saying at age 15, well, I want to move down the street and move in with Joey. I don't think that's right. And if she comes to you and says, Dad, I want to do that. You and Laura are living together, and you're not married, and I think it's fine and I want to go down there. And you can say all you want that you and Laura have a loving, committed relationship, but I don't think it flies.

So I'm telling you that in my opinion, it's bad for the child. I may be wrong. I'm just telling you that's my opinion. So I am making that order, and you can act accordingly, sir. But that is the order of the Court.

\* \* \*

And I- And I tell every set of parents I have in here, if you want to live with your boyfriend or girlfriend, fine, but don't have your child at home to view that conduct. To let them come into the bedroom, see you in bed. Let them see you all doing things which you shouldn't be doing if you aren't married, in my opinion. That's the way I am, and that's the way I judge it.

\* \* \*

(emphasis added). Mr. Buschardt argues that these statements, particularly the judge's statement that he "ma[d]e this order in ever [sic] case when the issue is presented to [him]," would cause a reasonable person to conclude that the judge was not impartial and had not decided the case on the facts presented.

 Litigants who present their disputes to a Missouri court are entitled to a trial which is not only fair and impartial, but which also appears fair and impartial. *State ex rel. Wesolich v. Goeke,* 794 S.W.2d 692, 695 (Mo.App.1990). To maintain its effectiveness, our legal system must assure the public that litigants will not be compelled to argue their claims in front of a judge the litigant believes is prejudiced. *Id.* at 694. A judge should withdraw from a case " 'if a reasonable person [ ... ] would find an appearance of impropriety [ ] and doubt the impartiality of the court.' " *State v. Nicklasson,* 967 S.W.2d 596, 605 (Mo. banc), *cert. denied,* —— U.S.——, 119 S.Ct. 549, 142 L.Ed.2d 457 (1998)*(quoting State v. Kinder,* 942 S.W.2d 313, 321 (Mo.banc 1996)*).*

In the oral pronouncement of his ruling, the trial judge specifically told the litigants that he ruled the same way in every case in which the issue of cohabitation was presented. While he was attempting to reassure Mr. Buschardt and Ms. Schmidt that he did not harbor ill will against them, his statement creates an appearance of partiality indicating a fixed prejudgment and an inclination not to fairly weigh the evidence. *Wesolich,* 794 S.W.2d at 698. We find that the judge's comments created the appearance of impropriety that would cause a reasonable person to doubt the impartiality of the court. *See Nicklasson,* 967 S.W.2d at 605.

This court has already ordered the remand and retrial of this cause. Because Mr. Buschardt had a reasonable basis to believe that the trial court's views regarding Mr. Buschardt's living arrangement with Ms. Schmidt caused the trial court to

prejudge the case and not properly weigh the evidence, he would also be reasonable to question the fairness and impartiality of the judge on retrial. While this court believes that the trial judge would consider the rulings of this court and enter a proper judgment on remand, the creation of the appearance that he is biased against Mr. Buschardt requires that the trial judge recuse himself and another judge be assigned to rehear the matter. The judge assigned on remand is directed to enter a judgment denying Ms. Jones's request to remove Stephanie from the state and to retry the issues of custody, visitation and support. In so doing, the judge will, of course, also be bound by this court's pronouncements as to the appropriate consideration of the evidence of cohabitation.

All concur.