Julia Bricker DOYNOV (now Burk),
Respondent Pro Se,

F.D.D. and A.M.D., Respondents,

v.

Plamen DOYNOV, Appellant,

William Burk, Defendant.

No. WD 62599.

Missouri Court of Appeals,
Western District.

Dec. 7, 2004.

Sandford P. Krigel, Kansas City, MO, for appellant.

Julia Bricker Doynov (now Burk), Kansas City, MO, pro se.

Barbara E. Hecht, Kansas City, MO, for F.D.D. and A.M.D.

Before ELLIS, C.J., LOWENSTEIN and BRECKENRIDGE, JJ.

PATRICIA BRECKENRIDGE, Judge.

Plamen Doynov appeals from the judgment dissolving his marriage to Julia Bricker Doynov, now Burk. The judgment awarded the parties joint legal custody of their minor children, designated Ms. Burk (Mother) primary residential custodian, set forth specific parenting time to Mr. Doynov (Father), ordered Father to pay child support in the amount of $1104 per month, and divided the parties' marital property.

Father appeals the child custody and support provisions of the trial court's judgment, asserting in his first three points that the trial court's award of parenting time was in error. In his fourth point, Father claims that the trial court erred in its child support award because the child support provisions require him to pay for the children's activities and lessons twice.

Four motions are also pending in the case. First, Father filed a motion to strike the deposition testimony of Dr. Sally Pollock from Mother's supplemental legal file because it was not offered or admitted in evidence at trial and, therefore, is not properly part of the record on appeal. Second, Mother filed a motion to conform the trial court's judgment concerning child tax exemptions to reflect the current state of the law as stated in *Vendegna v. Vendegna*, 125 S.W.3d 911 (Mo.App.2004). Mother also asserts in her brief that Father's brief is deficient for failing to comply with Rule 84.04(d) in stating his points relied on and for failure to comply with Rule 84.04(c) in setting forth the statement of facts. Mother moves to dismiss the appeal on those grounds. While Father's brief may not comply with all the requirements of Rule 84.04, the brief is not so deficient as to preclude review. Accordingly, Mother's motion to dismiss the appeal for failure to comply with Rule 84.04(c)-(d) is denied. Finally, Mother asserts in her brief that she is entitled to damages for frivolous appeal under Rule 84.19.

Because this court finds that the trial court's judgment regarding child support is inconsistent, the judgment is modified, pursuant to Rule 84.14, to enter the judgment the trial court should have entered and, as so modified, is affirmed. The judgment is affirmed in all other respects.

**Factual and Procedural Background**

Mother and Father were married on January 11, 1992, in Washington, D.C. They had two children, Felice, born on June 29, 1992, and Anya, born on May 19, 1995. In 1995, Father accepted a job with the Midwest Research Institute and the family moved to Kansas City. Mother and Father agreed that Mother would not work outside the home, even though while living in Washington, D.C., Mother graduated from law school and passed the Maryland bar.

In November 2001, William Burk, a friend of Mother's from law school, came to Kansas City to run a marathon and stayed at the parties' marital residence. Over the next two months, Mother and Mr. Burk began an intimate relationship. On or about January 26, 2002, Mother informed Father that she wanted a divorce. On February 15, 2002, Mother filed a petition for dissolution of marriage. Initially, Father did not want a divorce and took the position that the marriage was not irretrievably broken. Because of his desire to continue the marriage, Father remained in the marital residence.

Following an incident where Father restrained Mother against her will in the marital residence, Mother filed a petition for an ex parte order of protection against him, which the circuit court entered the following day. The ex parte order required Father to immediately move out of the marital residence, which he did, and prohibited Father from communicating with Mother. Mother eventually dismissed her petition for an order of protection, in exchange for an agreement by Father that he would not move back into the marital residence.

Trial was originally set for August 12, 2002. Three days before trial was to begin, Father learned that Mother was pregnant and that Mr. Burk was the father of

her child. After this discovery, Father no longer opposed the dissolution of the marriage. The trial setting was continued to August 26, 2002, with the Honorable Ann Mesle presiding. On that date, Judge Mesle dissolved the parties' marriage, established Mr. Burk as the father of Mother's unborn child, entered a temporary parenting schedule, and continued the trial to October 2002, for evidence regarding custody, parenting time, division of marital property, and attorney's fees.[1] Under the temporary parenting schedule, Father was to pick up Anya after school on Tuesday and return her to Mother at 7:00 P.M.; on Wednesdays, Father was to pick up both children after school and return them to school on Thursday morning; on Thursdays, Father was to pick up Felice after school and return her to Mother by 7:00 P.M. In addition, Father was to have parenting time from 3:00 P.M. on Friday through Monday morning the first and third weekends of each month. Father and Mother were to split parenting time during the fourth weekend of each month, with Father picking up the children from school on Friday and returning them to Mother on Saturday at 4:00 P.M.

The children, especially Felice, were very upset by the temporary parenting schedule because of the amount of time they were to spend with Father. Anya, in particular, was upset over the fact that she and her sister were separated during the time they spent with Father. On one occasion while the children were spending time with Father, Felice became very angry with Father. Both children left Father's house and walked across a park to the marital home where Mother was. Father followed the children and waited outside. The children were upset and scared and refused to go outside. Mother called Dr. Pollock to mediate the situation. Mother

and Father eventually decided that, because the children were so upset, they would remain with Mother for the weekend. Mother and Father further agreed that Father and Felice would meet with Dr. Pollock for a joint session the following week. Mother also took Felice to the doctor earlier that day to record bruises on Felice that she claimed Father had caused. Because of the accusation, Judge Mesle appointed a guardian ad litem. DFS conducted an investigation and ultimately concluded that the allegations were unsubstantiated. Upon the advice of the guardian ad litem, the parties agreed to participate in mediation, and the trial date was continued until December 2002. Sometime after Judge Mesle entered the temporary parenting schedule, the parties modified the parenting schedule as follows: Father would pick up both children after school on Tuesdays and return them to Mother at 7:00 P.M.; Father would pick up both children after school on Wednesdays and return them to school on Thursday morning; and the parents would alternate weekends, which would begin on Friday after school and continue until Monday morning.

Mother filed a motion to recuse Judge Mesle, which was granted, and the case was transferred to Judge Romano. Trial was held on December 16–18, 2002, and January 13, 2003. During the trial, the court heard testimony from both parties and various witnesses, including Dr. Pollock, who was the children's therapist, and Dr. Barbara Thompson, a therapist who met individually with Father and jointly with Father and Mother. On February 7, 2003, the trial court entered its judgment awarding the parties joint legal custody and designating Mother as the children's residential custodian, subject to Father's

---

1. Mother and Mr. Burk were subsequently married on September 28, 2002.

parenting time set forth in the parenting plan incorporated into the trial court's judgment. The court rejected the proposed parenting plans of both Father and the guardian ad litem and accepted Mother's proposed plan with slight modifications. The final parenting plan adopted by the trial court provides Father with parenting time every Wednesday from 3:00 P.M. until 8:00 P.M. and every other weekend from Friday at 3:00 P.M. until Sunday at 8:00 P.M. In addition, when the children are not in school on the day immediately after Father's parenting time, Father's parenting time continues until the next day at noon. The plan also allows each parent two uninterrupted weeks of vacation time during the summer and sets forth an alternating schedule for holidays. Finally, the trial court's judgment divided the parties' marital assets, ordered Father to pay $1104 per month in child support, and ordered Mother to pay $25,000 towards Father's attorney's fees. This appeal by Father followed.

## Standard of Review

▉▉▉ The standard of review in this case is established by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* This court will set aside a judgment as "against the weight of the evidence" only if it firmly believes that the judgment is wrong. *Buschardt v. Jones*, 998 S.W.2d 791, 796 (Mo.App.1999). There is the presumption that the best interests of the child motivate the trial court. *Id.* Therefore, the trial court's assessment of what serves the child's best interests will be affirmed unless this court is firmly convinced that the child's welfare requires some other disposition. *Id.* Where evidence on an issue is disputed, or

where there is contradictory evidence, this court defers to the trial court's credibility determinations. *Id.* Greater deference is given to the trial court's determination in child custody matters than in other cases. *Id.*

## Substantial Evidence Supports the Trial Court's Parenting Plan

Father's first three points on appeal take issue with the trial court's parenting plan. In particular, Father alleges that the trial court erred for various reasons in restricting his parenting time. Father couches all three of his claims of error in terms of a reduction in his parenting time. In this case, Judge Mesle's prior custody order was an interlocutory temporary order pending a final hearing on the merits of the custody issue. In fact, Judge Mesle expressly ordered that further proceedings were required before a final decision could be made concerning custody, parenting time, child support, and various other issues. Consequently, contrary to Father's arguments, the trial court's custody award was not a reduction in Father's parenting time. Accordingly, this court will assume that Father is actually challenging the amount of parenting time awarded to both parents. Because of the nature of Father's claims of error, this court will address his first three points out of order.

▉▉▉ In Father's third point, he argues that the trial court erred in reducing his parenting time without making section 452.400.2 findings. Section 452.400.2 governs the modification of visitation rights and provides that "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health

or impair his emotional development." Thus, Father correctly notes that, to "restrict" a parent's visitation rights, the trial court must make appropriate findings. Nevertheless, as discussed above, Father's argument fails because section 452.400.2 is applicable only in modification actions. Because Judge Mesle's prior custody order was an interlocutory temporary order pending a final hearing on the merits of the custody issue, the trial court's final order was not a "modification" of a prior custody order. Therefore, section 452.400.2 findings were not required. Father's third point is denied.

■■■ In his second point, Father alleges that the trial court erred in reducing his parenting time from the time he had prior to trial, because the weight of the evidence did not support the trial court's conclusion that reducing his parenting time was in the children's best interest. As discussed above, this court will assume that Father is actually challenging the amount of parenting time awarded. Father points to evidence in the record to support his position that the temporary schedule in place at the time of trial was in the children's best interest. When reviewing an argument that the decision was against the weight of the evidence, a judgment will be set aside only " 'with caution and with a firm belief that the decree or judgment is wrong.' " *Div. of Child Support Enforcement v. Estrada*, 916 S.W.2d 443, 447 (Mo. App.1996) (citation omitted).

The basis for determining child custody is the best interests of the child and the trial court is guided in making this decision by the eight factors set forth in section 452.375.2. These factors include:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved . . . . ;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

Section 452.375.2.

Regarding the first factor, the wishes of the child's parents as to custody and the parties' proposed parenting plans, the trial court's judgment expressly states that the court considered the parenting plans submitted by Father, Mother, and the guardian ad litem. On appeal, Father argues that the trial court should have entered the custody schedule that was in place at the time of trial. At trial, however, Father requested the parenting time as set forth in his proposed parenting plan. Under that plan, during a two-week period, the children would spend Monday and Tuesday with Father and the following Wednesday and Thursday with Mother. Friday through Monday morning would be spent with Father and the next five days (Wednesday through Monday morning) would be spent with Mother. Father's plan would have significantly increased his

parenting time over the schedule in place at the time of trial.

Dr. Pollock testified at trial, however, that it would not be in the children's best interest to increase the time the children spent with Father. Father's own witness, Dr. Thompson, testified that, in her opinion, the parties should only gradually move into a more equal sharing of time. Most important, however, there was extensive evidence in the record that the children did not fare well under the temporary custody order, which included even less time with Father than the plan Father proposed at trial. Even under the temporary plan, modified by the parties to include less time with Father because of the disruption to the children, Dr. Pollock found that Felice was depressed. Moreover, both children were sick more often because of the stress of the divorce and issues surrounding custody. Thus, this court finds that the weight of the evidence regarding the first factor suggests that the parenting plan that Father proposed at trial was inappropriate.

The weight of the evidence under the second factor, the needs of the children for a meaningful relationship with both parents and the parents' ability to actively perform their functions, demonstrates that Mother has been the primary caretaker of the children since their birth. During their marriage, the parties maintained a traditional marriage, where Mother stayed at home and cared for the children while Father worked. Consequently, Mother made the majority of the decisions concerning the children's needs and was responsible for transporting them to and from school and to their various activities. Mother participated in the children's activities and supervised homework and music practice. When the children were sick, Mother took them to the doctor and cared for them. When Anya was diagnosed with mild to moderate sensory neural hearing loss, Mother spent two or three years working with Anya on speech therapy. As a result of Mother's efforts, Anya's speech impediment disappeared and she is now doing well. Moreover, Father even conceded that Mother was a good mother and that he had no complaints about her parenting skills until their separation.

Father, on the other hand, spent little time with the children prior to the parties' separation because of his work and, therefore, performed few parental functions. As a result, Father had limited parenting skills. For example, while the evidence did show that Father was willing to perform his duties as a parent, and that he had invested a considerable amount of effort to improve his parenting skills, Dr. Pollock testified that Father "did not know a lot about how to be a single parent" and that more parenting classes would be beneficial to Father.

In addition, the evidence demonstrated that the children, especially Felice, worries about many things while with Father. For instance, Felice worries about getting her schoolwork done and being on time. Because Felice had not seen Father make parental decisions before the parties' separation, she feels responsible for taking care of things when Mother was not around. In particular, Felice does not trust Father to make good parenting decisions about Anya and worried about his care of Anya. In addition, Felice feels the need to take care of both Father and her grandmother, who is visiting from Bulgaria and does not speak English. Consequently, this court finds that the weight of the evidence as to the second factor weighs in favor of Mother.

The evidence as to the third factor, the interaction of the children with parents, siblings, and others who may significantly affect the children's best interests, also

weighs in favor of Mother. Specifically, Dr. Pollock testified that the children adore their mother, have their emotional needs met by her, and that Mother is very disciplined, structured, and organized. The children were very happy and well adjusted when Mother was their primary caregiver.

On the other hand, while the evidence did show that both children love Father, Dr. Pollock testified that Father did not have a calming influence over his children and Father provides no discipline while the children are in his care. Felice feels that Father wants the children to feel sorry for him and makes her feel guilty. The children, especially Felice, are angry with Father because they believe that he does not tell the truth. The children also feel that Father is moody and needy. Dr. Pollock recommended that Father be evaluated for medication to make his emotional containment easier. Dr. Pollock further described the impact of the parties' dissolution on the children as "one of the worst cases that [she has] worked on in the way that it's impacting the children." Dr. Pollock described the children as upset and very agitated, with the stress of the divorce being enormous on the children. When the parties voluntarily reduced Father's time with the children, the girls were more relaxed and comfortable while visiting with Father. Nevertheless, Dr. Pollock continued to see problems with the children. Accordingly, the weight of the evidence as to the third factor favors Mother.

As to factor four, which parent is more likely to allow the child frequent and meaningful contact with the other parent, despite allegations to the contrary, the trial court expressly found that Mother had not tried to alienate the children from Father. The evidence demonstrated that both parties understand the need for both children to enjoy frequent, continuing, and meaningful contact with the other parent. Therefore, factor four weighs in favor of neither party.

Concerning factor five, the children's adjustment to home, school, and community, the evidence demonstrated that after a short adjustment period, both children have continued to flourish in school and in the community. Nevertheless, Felice's grades did go down after the separation, especially on tests taken the day following an evening spent with Father. Consequently, factor five weighs in favor of Mother.

Factor six concerns the mental and physical health of all of the individuals involved. As discussed above, the evidence demonstrated that Anya has mild to moderate sensory neural hearing loss and wears bi-lateral hearing aids. Because Anya is now doing well and there are presently no physical health issues with Anya or any other party, factor six weighs in favor of neither party.

Regarding factor seven, while both parents initially expressed an interest in moving, at the time of trial, the evidence showed that neither party had an intent to relocate. Therefore, factor seven weighs in favor of neither party. Finally, concerning factor eight, the children's wishes as to their custodian, evidence from Dr. Pollock showed that both children do not want to spend as much time with Father as with Mother. Consequently, factor eight weighs in favor of Mother.

Considering the evidence under the factors of section 452.375.2, the parenting schedule adopted by the trial court is not against the overwhelming weight of the evidence. See *Murphy*, 536 S.W.2d at 32. Therefore, Father's second point is denied.

Finally, in his first point, Father argues that substantial evidence does not support

the trial court's reduction in his parenting time because, in making its award, the trial court improperly relied on the deposition testimony of Dr. Pollock, which was never admitted into evidence. In response to Father's claim, Mother filed a supplemental legal file including the deposition testimony at issue. Mother contends that the evidence was properly before the court because her proposed custody order, which was admitted without objection at trial, included a summary from Dr. Pollock's deposition transcript that had been previously admitted and was in the circuit court file. In particular, Dr. Pollock's deposition testimony was admitted in evidence during the hearing before Judge Mesle, wherein the parties' marriage was dissolved and the temporary custody order was ordered. In response to Mother's filing of the supplemental legal file, Father filed a motion to strike the deposition testimony from Mother's supplemental legal file.

■ As Father correctly notes, at the beginning of the trial at issue, here, the parties expressly agreed, and the court found, that none of the evidence adduced at the previous trial would be considered in this matter because of the change of judge. Consequently, Dr. Pollock's deposition testimony was not properly before the trial court in this matter.

■ "The admission of improper evidence is not ordinarily a ground for reversal in a [court-tried] case, at least where it did not appear to have played a critical role in the court's decision." *Gardner v. Robinson*, 759 S.W.2d 867, 868 (Mo. App.1988). The party arguing reversible error "must demonstrate that there was an absence of sufficient competent evidence to support" the trial court's judgment. *Id.* This "court's primary concern is with the correctness of the trial court's decision and not the route by which it was reached." *Id.*

Here, the trial court expressly made findings in reliance on the deposition testimony of Dr. Pollock in its final judgment, when the evidence was not properly admitted. The trial court's improper reliance on such evidence does not require reversal in this case, however, because Dr. Pollock and Mother's testimonies at trial included nearly all the same matters as the deposition testimony relied on by the trial court. Only three of Dr. Pollock's twelve deposition statements noted by the trial court in its final judgment were not directly or indirectly testified to by Dr. Pollock or Mother during trial.

One of the statements from Dr. Pollock's deposition testimony that was not directly testified to at trial was that "[Mother] and Ms. Pollock observed that the children consumed [Father] and that he has no other social life of his own outside the children." The evidence at trial did demonstrate, however, that since the parties' separation, Father was consumed with spending parenting time with the children. In particular, Dr. Pollock testified at trial that during their sessions, Father was continually focused on getting more time with the children, and that Father "felt that he could not co-parent unless he had more time with the children." While there was no evidence that Father was consumed with spending time with the children to the exclusion of his own social life, given Dr. Pollock's testimony, it is clear that Father was consumed with the amount of time he spent with the children. Consequently, this statement relied on by the trial court was sufficiently cumulative of other statements made by Dr. Pollock and the reference to Father's social life was insignificant.

Another statement from Dr. Pollock's deposition testimony relied on by the trial court that was not testified to during the trial was that "[a]n alternating weekend

schedule and one evening per week is adequate time to establish a co-parenting routine." This statement does not require the special expertise of Dr. Pollock and would be within the trial court's prior knowledge and experience because it concerns a parenting plan routinely awarded to parties in joint physical custody cases. Such parenting plan would not be routinely awarded if it were not adequate to establish a co-parenting routine. There is little likelihood that this statement by Dr. Pollock would have played a critical role in the trial court's decision.

The last statement contained in Dr. Pollock's deposition testimony that the trial court relied on is the following:

> [Dr.] Pollock advised [Father] on August 11th that children don't have a stopwatch. That he could do quality parenting without having to have them 50% of the time. That he mustn't worry that if he didn't get 50% it meant that he could not be an important parent in their lives. That substantial time with each parent was what was important. And that every other weekend and one night a week is substantial time.

This statement merely indicates what advice Dr. Pollock gave to Father concerning parenting time. The statement reveals nothing outside of the evidence at trial about Father's behavior, but merely is Dr. Pollock's response to Father's fixation with obtaining additional time with the children. Since there was substantial evidence that Father was overly concerned with the amount of parenting time he was awarded, such statement was not likely to have played a critical role in the court's decision.

In sum, the majority of Dr. Pollock's deposition testimony added nothing to the testimony she offered at trial and was merely cumulative of her trial testimony. The three statements that were not cumu-lative of trial testimony were not likely to have been a decisive factor in the trial court's decision. Consequently, any error committed by the trial court in relying on Dr. Pollock's deposition testimony in its final judgment is not reversible. *Id.* (finding no prejudicial error in admission of evidence that was cumulative and added nothing to other evidence). Moreover, as discussed above, substantial evidence supports the trial court's parenting schedule in the record properly before the trial court. Consequently, Father fails to demonstrate that there was an absence of other sufficient competent evidence to support the trial court's judgment. *Id.* *See also Love v. Love,* 72 S.W.3d 167, 173 (Mo.App. 2002) (" '[I]n a court-tried case, erroneous admission of evidence only requires reversal where there is an absence of other sufficient competent evidence to support the decree.' " (citation omitted)). Father's first point is denied. Accordingly, Father's motion to strike the deposition testimony of Dr. Pollock from Mother's supplemental legal file is denied as moot.

### Judgment Inconsistent Regarding Payment of Cost of Children's Activities

In his fourth point, Father contends that the trial court erred in determining the amount of child support that he is required to pay because the Form 14 adopted by the trial court includes $250 per month for extraordinary child rearing costs, of which Father is required to pay eighty percent, and the parenting plan adopted by the trial court requires that he and Mother equally share the costs of the children's activities, including those that are already included in the $250 extraordinary child rearing costs. The effect of the trial court's order, Father argues, is that he is required to pay for the children's activities twice.

Mother, on the other hand, contends that the judgment does not require Father to pay twice. Instead, Mother asserts that Father is required to pay eighty percent of the total extraordinary child-rearing expenses included in the Form 14 calculation, and the requirement that she and Father equally share the cost of the children's activities contained in the parenting plan simply establishes the cost ratio for the children's activities not accounted for at the time of trial.

 " 'In construing a court's judgment, the words and clauses used in a judgment are to be construed according to their natural and legal import.' " *Holsman v. Holsman*, 49 S.W.3d 795, 797 (Mo. App.2001) (citation omitted). This court must determine the trial court's intention in entering the order. *Id.* On the issue of the children's activities, the judgment states:

3. *School, Sports and Social Activities*

*Continue with Current School.* FELICE and ANYA shall continue to attend Pembroke Hill School. Mother and Father shall each pay 50% of the costs of same, including tuition, lunches, books and fees, and other expenses directly billed by Pembroke Hill School.

*Activities.* The parties shall confer with one another and, when appropriate, FELICE and ANYA, in determining the activities in which FELICE and ANYA will participate. In the event the parties cannot agree, the parent having residential custody when said activity is scheduled to occur shall determine the activity. If the activity is scheduled to take place during both parents parenting time, the parents shall attend mediation to resolve any such disputes. Mother and Father shall equally share the costs of the children's activities. The children shall continue with their *present activi-*

*ties,* including piano, flute, drama and soccer.

(Emphasis added.)

It is clear from paragraph 3 that in setting forth a procedure to resolve disputes regarding the children's future activities, the trial court contemplated activities that were not accounted for at trial. The plain and ordinary language of the judgment also demonstrates that the trial court contemplated the children's "present activities" in adopting paragraph 3 of the parenting plan. In the same paragraph the trial court ordered the parties to "share equally the costs of the children's activities," but does not limit those activities, such as limiting the equal payment of costs to only future activities. This language does not support, as claimed by Mother, that the trial court intended for the parties to equally share only the costs of future activities that were not accounted for at trial. Thus, in view of the fact that the trial court considered both the children's present activities and possible future activities, it appears from the plain and ordinary language used that the trial court intended, in paragraph 3, that the parties equally share the cost of both the children's present and future activities.

The trial court's child support award ordering Father to pay $1104 per month in child support was adopted in accordance with Mother's Form 14, attached and incorporated by reference into the judgment. Included in line 5(e) of the Form 14 was $250 for other extraordinary child rearing costs for the children's activities. These costs were supported by evidence presented at the dissolution hearing and included the costs of the children's piano and flute lessons, soccer, basketball, and drama. Since Father's support obligation was 80.2% of the children's total child support costs, pursuant to the Form 14, Father was required to pay $200.50 per month of

the $250 total costs of the children's activities.

Paragraph 3 of the parenting plan set out in the judgment, however, provides that the parties pay a different ratio for the costs of the children's activities. In particular, the parenting plan stated that "Mother and Father shall equally share the costs of the children's activities." Thus, according to the parenting plan, the trial court ordered Father to pay one-half of the total cost of the children's activities, which would be $125 per month.

Thus, while the provisions for child support in the trial court's judgment do not require Father to pay for all of the children's activities twice, the trial court's judgment is inconsistent, in that Father was ordered to pay child support for the children's activities in different amounts.[2] Nevertheless, the inconsistency in the trial court's judgment is not so significant to require remand for reconsideration. Accordingly, the provision in paragraph 3 of the parenting plan in the trial court's judgment is modified by this court, under Rule 84.14, to enter the judgment the trial court should have entered. In particular, the trial court's judgment stating that "Mother and Father shall equally share the costs of the children's activities," is modified to read as follows: "Mother and Father shall equally share the portion of the costs of all reasonable children's activities that exceeds $250 per month."

## Attorney's Fees

■ Several times in her brief, Mother claims that she is entitled to damages for frivolous appeal under Rule 84.19. Father's claims are not devoid of merit to justify an award of damages for a frivolous appeal. In fact, Father's fourth point regarding the trial court's calculation of child support was meritorious. Therefore, Mother's request for damages for frivolous appeal is denied.

## Tax Exemption

■ By way of a motion to conform the judgment filed with this court, Mother seeks to have the tax exemptions that were awarded to Father in the trial court's judgment awarded to her, based on this court's decision in *Vendegna*, 125 S.W.3d at 913–14. Mother, however, did not appeal that portion of the trial court's judgment that awarded the income tax exemptions to Father. Rather, Mother raised the issue in a motion filed with this court in Father's appeal. Consequently, she cannot be heard to complain about any trial court error regarding that issue now. *McKnight v. Midwest Eye Inst. of Kansas City, Inc.*, 799 S.W.2d 909, 919 (Mo.App. 1990) ("The argument of the respondent that the judgment was erroneous ... seeks to lessen the rights of the adversary, and so required a cross-appeal to present it for our decision.").

## Conclusion

The provision pertaining to payment of the costs of the children's activities in paragraph 3 of the parenting plan in the trial court's judgment is modified by this court under Rule 84.14. In particular, the provision in the trial court's judgment stating that "Mother and Father shall equally share the costs of the children's activities," is modified to read as follows: "Mother and Father shall equally share the portion of the costs of all reasonable children's activities that exceeds $250 per month." Accordingly, the judgment as to child sup-

---

**2.** It is not necessary to undertake the two-step procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), because the error claimed by Father does not implicate the Form 14 calculation or rejection or rebuttal of the Form 14 amount.

port, as so modified, is affirmed. The judgment is affirmed in all other respects.

All concur.