**Theresa L. (Kurtz) BOMAR, Appellant,**

v.

**Paul M. KURTZ, Respondent.**

**No. WD 53537.**

Missouri Court of Appeals, Western District.

July 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 2, 1997.

Application to Transfer Denied Oct. 21, 1997.

Candace J. Barnes, St. Joseph, for Appellant.

James D. Boggs, Kansas City, for Respondent.

Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Theresa L. (Kurtz) Bomar appeals the judgment of the trial court modifying the custody of her two minor children. On November 27, 1995, respondent, Paul M. Kurtz, filed a motion to modify the custody of the parties' two minor children, J.M.K. and J.K., from appellant to him. Appellant filed a counter-motion, requesting that the court award her attorney's fees and costs in defending against respondent's motion. The trial court sustained respondent's motion to

modify and ordered that the sole legal and physical custody of the children be changed from appellant to respondent; that appellant pay child support to respondent in the amount of $250 per month; and, that appellant pay respondent $750 for attorney's fees. On appeal, appellant claims that the trial court erred in changing custody of the children in that the evidence was insufficient to support a finding that a substantial and continuing change in circumstances had occurred rendering it in the children's best interests to change their custody.

We reverse and remand in part and dismiss in part.

### Facts

The parties were married March 7, 1987. Their first child, J.M.K., was born June 9, 1987, and their second child, J.K., was born March 25, 1990. The parties separated on or about January 27, 1995, and soon thereafter, in April of 1995, appellant began a sexual relationship with James Morris. Appellant and Morris have since married.

A decree of dissolution of marriage was entered September 6, 1995, by the Circuit Court of Holt County, dissolving the parties' marriage. The parties entered into a separation agreement agreeing that the best interests of J.M.K. and J.K., who at the time were eight and five years old respectively, would be served by joint legal custody, with physical custody to appellant. The trial court, the Honorable John C. Andrews, incorporated this agreed custodial arrangement into its decree. At the time the decree was entered, appellant was pregnant with a child fathered by Morris. However, appellant testified at trial and represented to respondent that she was not pregnant. K.M.M., the child of appellant and Morris, was born on January 31, 1996.

After learning of appellant's pregnancy, respondent filed his motion to modify custody on November 27, 1995, approximately two and a half months after the decree of dissolution was entered, requesting sole legal and physical custody of the parties' two children, claiming appellant's lifestyle was having a detrimental effect on them. Respondent's motion also requested attorney's fees. Appellant filed a cross-motion on December 22, 1995, requesting attorney's fees and costs. Following a hearing on respondent's motion, the trial court entered an order modifying the decree changing sole legal and physical custody from appellant to respondent, and ordering appellant to pay respondent child support in the amount of $250 per month and attorney's fees of $750. The trial court stated that it was changing custody because a substantial and continuing change in circumstances had occurred in that, by living with Morris out of wedlock, appellant had exposed the children to an immoral relationship that produced an illegitimate child.

### Standard of Review

Our review of orders modifying child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Rogers v. Rogers*, 923 S.W.2d 381, 383 (Mo.App. 1996). We will affirm the trial court's order modifying custody so long as it is based on substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or misapplication of law. *Id.; Mobley v. Phillips*, 942 S.W.2d 399, 400 (Mo.App.1997). "When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears." *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App.1996). "Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Id.* In reviewing an order modifying child custody,

> [a] great deal of caution should be exercised in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence, and only then upon a firm belief that the judgment of the trial court was incorrect. In child custody matters the trial court's determination must be given greater deference than in other cases.

*Id.* (citations omitted). In our review, we view the evidence in the light most favorable to the decision of the trial court. *Rogers*, 923 S.W.2d at 383.

## I.

Appellant sets out four points on appeal, each of which essentially claims that the trial court's modification of custody was against the weight of the evidence as to the occurrence of a substantial and continuing change in circumstances rendering a modification as being in the best interests of the children. Appellant alleges four bases for why the trial court's judgment was against the weight of the evidence, specifically that: (1) the evidence was insufficient to show that the children had been adversely affected by appellant's lifestyle; (2) any confusion the children had over their familial relationships was due to the respondent's actions; (3) the court failed to consider evidence of the impact of separating the children from their half-sister, K.M.M.; and (4) the clear weight of the evidence established that the parties could be effective joint legal custodians and that the best interests of the children were being served under the existing custodial arrangement. Because all four of appellant's points allege that the evidence was insufficient to support a finding of a change in circumstances requiring a change of custody as being in the children's best interests, we will address them as one claim.

 Section 452.410.1[1] sets forth the standard that must be met for modifying a prior custody decree. It provides, in pertinent part, as follows:

> ... the court shall not modify a prior custody decree unless it has jurisdiction under the provisions of § 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

A finding of changed circumstances under this section, is "a precursor to a finding that the best interests of the child necessitate a modification of a prior custody decree...." *Guier,* 918 S.W.2d at 947. "The change in circumstances must be of a nature that the child will substantially benefit from the

transfer" and the welfare of the child requires it. *Id.*

 The party seeking to change custody has the burden of proving a change in circumstances and that the modification is necessary to serve the best interests of the children. *Rogers,* 923 S.W.2d at 383. There is a presumption that the party awarded custody in the original decree is a suitable custodial parent. *Guier,* 918 S.W.2d at 947. Section 452.375.2 provides that in awarding custody as being in the best interests of a child, trial courts are to consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state;

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2; *Gant v. Gant,* 923 S.W.2d 527, 530 (Mo.App.1996).

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

 As to a change in circumstances, the trial court here found that there had been a substantial and continuing change in circumstances in that:

the [appellant] co-habited with James Morris, a man to whom she is not related by blood or marriage. Said co-habitation had already resulted in the birth of one (1) child out of wedlock. This co-habitation together with the life style which the [appellant] has adopted represents a lack of moral standards warranting the need to modify the terms of the judgement decree of dissolution of marriage to serve the best interests of the children.

Appellant contends that the record does not support the best interests finding of the trial court on which its order of modification is predicated. We agree.

Although morals are a factor to consider in determining custody, sexual misconduct is not sufficient in and of itself to deprive a parent of custody. *Hartig v. Hartig,* 738 S.W.2d 160, 161 (Mo.App. E.D.1987); *M.B. v. J.W.B.,* 628 S.W.2d 358 (Mo.App. E.D. 1981). 'The issue is not condemnation or approval of a moral standard but whether the conduct is detrimental to the child's welfare.' *In re Marriage of Newberry,* 745 S.W.2d 796, 797 (Mo.App. S.D.1988). Moral conduct warrants a change in custody only in those instances where the conduct of the offending spouse is "so gross, promiscuous, open or coupled with other antisocial behavior as to directly affect the physical, mental, economic and social well-being of the child that a change is warranted." *Humphrey v. Humphrey,* 888 S.W.2d 342, 346 (Mo.App. E.D.1994). The record must contain evidence that the parent's conduct has had or will have an adverse impact on the child. *Massman v. Massman,* 784 S.W.2d 848, 849 (Mo.App. E.D.1990).

*Mobley,* 942 S.W.2d at 401–02.

 Respondent filed his motion to modify approximately two and a half months after the parties' dissolution. At the time of the dissolution, respondent admitted that appellant was a good mother and that it would be in the children's best interests to be in her physical custody. Since that time, the only change in appellant's or the children's circumstances was that respondent learned that appellant was pregnant with a child by Morris, whom she later married after the change of custody, and that she had lied about it to him and the court. Respondent admitted in his testimony that it was this information that prompted the filing of his motion to modify, although he did express some other limited concerns regarding appellant's "partying" and leaving J.M.K. with babysitters who smoked and/or owned pets, to which J.M.K. was allergic.

The record indicates that appellant started a sexual relationship with Morris in April or May of 1995, which was after she had separated and filed for her dissolution, but before it was granted. Appellant testified at trial on respondent's motion to modify that at the time of her dissolution she was pregnant by Morris, and that she gave birth out of wedlock to his child, K.M.M., on January 31, 1996. She also testified that Morris had been living with her for about one month, and that they were engaged to be married. At oral argument, appellant's counsel stated that she and Morris married shortly after custody was modified. Appellant also admitted that she lied about being pregnant to respondent and to the trial court because she didn't want to lose custody of the children. As to respondent's concern about appellant's "partying," the evidence reflects that appellant was "partying" on the weekends during her separation from respondent, but both parties agreed that the "partying" had stopped for approximately a year, or about the time she became pregnant with K.M.M., which was before the dissolution of marriage.

There is no evidence that the children were aware of or were in any way affected by appellant's "partying." And, there is no evidence, other than their awareness of Morris living in the home and the birth of their half-sister, K.M.M., when their mother was not married, that the children had any knowledge of appellant's complained-of lifestyle. There is also no evidence that appellant's past lifestyle has had or her present lifestyle will have any adverse impact on them.[2] Re-

---

**2.** While respondent notes the children had some confusion as to familial relationships concerning

spondent's own testimony reveals that the children, while in appellant's custody, were happy and healthy and doing well in school. There was no evidence appellant's home was unsuitable for the children nor was there any evidence that Morris posed any danger to them. There was also no evidence that appellant had attempted to interfere with respondent's visitation or his relationship with the children; in fact, respondent testified to the contrary. The record before us simply does not support a finding that appellant's conduct or lifestyle was "so gross, promiscuous, open or coupled with other anti-social behavior" as to directly affect "the physical, mental, economic and social well-being" of her children, or that it "had or [would] have an adverse impact" on them. *Id.*

Custody is determined by existing conditions. *In Interest of Hill*, 937 S.W.2d 384, 388 (Mo.App.1997); *In Interest of Feemster*, 751 S.W.2d 772, 773 (Mo.App.1988). "Past conditions are material only to the extent that they clarify and cast light on existing conditions." *Feemster*, 751 S.W.2d at 773. While cohabitation can constitute a substantial change in circumstances, in this instance, without condoning appellant's past behavior, we find there is no evidence it adversely affected the children rendering it in their best interests that custody be changed. Moreover, there is no evidence in the record to indicate that appellant's present lifestyle will in any way adversely affect the children in the future. Thus, we find the record insufficient to support the trial court's finding that the change in circumstances found here required a change of custody from appellant to respondent as being in the best interests of the children.

### Conclusion

The judgment modifying custody is reversed and the cause remanded to the trial court directing it to enter its order immediately restoring physical custody of the parties' minor children to appellant. Although appellant's notice of appeal included the trial court's award of attorney's fees to respon-

dent, because she failed to brief the same as required by Rule 84.04(d), her appeal as to the award is dismissed pursuant to Rule 84.08.

All concur.

---

K.M.M., this confusion does not result from appellant's alleged immoral lifestyle. The fact that the children now have a half-sister is no more confusing here than it would be if the half-sister had been born after rather than before appellant remarried.