**David Ray GOULD, Respondent,**

v.

**Rachel DICKENS, Appellant.**

No. ED 83187.

Missouri Court of Appeals, Eastern District.

Aug. 3, 2004.

Application for Transfer to Supreme Court Denied Sept. 9, 2004.

Nathan S. Cohen, Clayton, MO, for appellant.

Daniel E. Leslie, Joseph Aubuchon, Union, MO, for respondent.

Matthew Schroeder, Union, MO, Guardian Ad Litem.

BOOKER T. SHAW, Presiding Judge.

R.L.G. ("RLG") was born on December 27, 1997. Rachel Dickens ("Mother") is the natural mother of RLG and David Ray Gould ("Father") is the natural father of RLG. Mother and Father never married. On April 18, 2001, Father filed his Petition for Appointment of Next Friend of Child, together with his Petition for Declaration of Paternity in the Circuit Court of Franklin County. Father sought sole legal and physical custody of RLG and requested that the court only permit Mother to have supervised visitation with RLG.

Mother filed a motion to dismiss for lack of venue or, in the alternative, to transfer venue, along with a limited entry of appearance. Mother also filed an answer and cross-petition, seeking sole legal and physical custody of RLG, child support and necessaries, including pre-natal medical expenses, birthing expenses and post-natal expenses, and attorneys' fees. Both parents made allegations of potential sexual abuse of RLG. The Court appointed a guardian ad litem ("GAL") who entered his appearance on behalf of RLG.

Father and Mother were dating when Mother became pregnant with RLG. Father was present for the birth of RLG, but did not provide any funds toward Mother's maternity expenses or medical costs for RLG. Father and Mother broke up for a period of time after RLG's birth. They reconciled and began living together with Father's grandparents in Arkansas around Memorial Day in 1998. Around the summer of 1998, Mother and Father moved in with Mother's parents. Father testified that he assisted in caring for RLG and was an active parent. Mother, Father and RLG subsequently moved to Washington, Missouri.

In the fall of 1999, Mother told Father that she was moving out to live with her friend, Erin Fletcher. Eventually, Mother and Father set up a schedule for RLG, whereby Mother would see RLG each week from Saturday or Sunday until Monday or Tuesday. Around the fall of 2000, Mother went to live with her partner, Ty Ruth. Father enrolled RLG in a day care center near his home and Father continued to pay day care costs for RLG for the times when RLG was not attending day care in order to ensure an opening for him there. Specifically, Father paid approximately $4,000 for RLG's enrollment from August of 2001 until June of 2002.

Both Mother and Father made allegations of possible sexual abuse of RLG. In April of 2001, Father applied for and received a child protective order based upon allegations that RLG witnessed Mother and Ty Ruth engage in a sexual act. Father later signed a hand-written statement recanting these allegations. Mother subsequently filed a cross-petition alleging sexual abuse of RLG by Father. Mother denied Father access to RLG during the investigation of these allegations.

The Jefferson County Division of Family Services ("DFS") investigated the allegations of sexual abuse by Mother and Father. Tim Finley, an investigator for DFS, testified that he spoke with RLG and that no statements about sexual abuse were made to him. The allegations of sexual abuse were unsubstantiated.

The GAL called the court-appointed psychologist, Dr. Rosalyn Schultz, to testify at trial. Ms. Schultz is a licensed psychologist who was appointed by the court to meet with RLG for the purpose of conducting a sexual abuse evaluation. She also interviewed Mother, Father and Mother's partner, Ty Ruth. She rendered her opinion to a reasonable degree of psy-

chological certainty that there is not sufficient evidence to support the allegations that RLG was sexually abused by anyone. Her opinion was based on RLG's inconsistent statements and the inconclusive reason for RLG's sexualized behavior.

The GAL submitted his report to the trial court where, although he found that "[b]oth parents testified to a loving and caring relationship between themselves and the child," and that both could provide for RLG's needs, "it also appears from testimony . . . that [Father] is more willing to provide for [a] frequent, continuing and meaningful relationship between the child and his mother rather than vice versa." As a result, the GAL recommended that the trial court award Father primary physical custody of RLG with liberal visitation rights to Mother.

The trial court entered its amended judgment of paternity on May 29, 2003, finding that RLG should be in the primary legal and physical custody of Father, subject to the visitation and temporary custody of Mother as set forth in its attached parenting plan. The parenting plan provided that "[Mother's] right to overnight visitation shall be subject to the condition that Ty Ruth not occupy a bedroom with [Mother] under the same roof with the minor child." The trial court denied Mother's requests for child support, necessary expenses and attorneys' fees, and ordered Mother to pay child support in the amount of $343.58 per month. The trial court also "noted [Father's] payment to keep appropriate day care available for [RLG] while the child was kept from him, and it is specifically ordered th[at] he have the 2002 state and federal tax dependency exemptions for the child." Mother appeals from this judgment.

Mother raises five points on appeal. In three of Mother's points, Mother argues the trial court erred in not granting Mother custody of RLG and restricting her overnight visitation with RLG. Specifically, in one of her points, Mother argues the trial court erred by not entering the required findings under Section 452.400, RSMo 2000, and violating Mother's rights to due process and equal protection by entering a parenting plan which restricted Mother's overnight visitation with RLG to when Mother's partner, Ty Ruth, does not occupy a bedroom with Mother in the same household as RLG because there was no evidence at trial to demonstrate that such a restriction served the best interest of RLG. We agree and reverse and remand for a new trial. Mother's two remaining points on appeal, which relate to a request for retroactive child support and necessaries pursuant to Section 210.828, RSMo 2000, and the award of the federal income dependency exemption for the 2002 tax year, are also reversed and remanded for reconsideration on retrial.

■■■■ We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares the law. *Buschardt v. Jones,* 998 S.W.2d 791, 796 (Mo.App. W.D.1999). The trial court's determination of what is in the best interest of the child will be affirmed unless the court on appeal is "firmly convinced that the child's welfare requires some other disposition." *Id.* We give greater deference to the trial court's determination in child custody cases than in other cases. *Id.*

Mother argues the trial court erred in restricting her overnight visitation with RLG. The trial court's parenting plan specifically states, "[Mother's] right to overnight visitation shall be subject to the condition that Ty Ruth not occupy a bedroom with [Mother] under the same roof with the minor child."

██ Section 452.400.1, RSMo 2000, which governs the grant of visitation rights to a non-custodial parent, provides in relevant part: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development." Therefore, in order for the trial court to make a restriction on a non-custodial parent's right to visitation with a child, it must make the finding that the child's emotional development will be impaired or that the child is in physical danger. *S.E.P and M.C.P v. Petry*, 35 S.W.3d 862, 871 (Mo.App. W.D.2001). This finding that a " 'parent's conduct has had or will have an adverse impact on the child' " must be supported by the record before the court. *Id.* (quoting, *Mobley v. Phillips*, 942 S.W.2d 399, 402 (Mo.App. W.D.1997)). "If it does not make an explicit finding we will presume it made an implicit finding in accord with the result reached, *if supported by substantial evidence.*" *H.S.H., et al. v. C.M.M., et al.*, 60 S.W.3d 656, 660 (Mo.App. E.D.2001) (emphasis added); *see Buschardt*, 998 S.W.2d at 799 ("When the trial court fails to make an express finding of impairment or endangerment, the required finding may be inferred from the restriction placed on the visitation.")

In *Buschardt*, the father argued on appeal that the trial court erred in prohibiting him from exercising his temporary custody or visitation rights with his daughter when he was cohabitating with his girlfriend. *Id.* The trial court's restriction specifically stated, "Both parties are prohibited from having an adult of the opposite sex to whom they are not lawfully wed or related to [sic] spending the night with them during periods of custody or visitation." *Id.* The trial court also made numerous oral pronouncements during the trial that father's cohabitation with his girl-

friend sets a bad example for his child. *Id.* The appellate court inferred from the trial court's oral and written statements that father's cohabitation with his girlfriend "was likely to impair [daughter's] moral or emotional development, and the restriction was made on that basis." *Id.*

██ Initially, the court noted that the pertinent statutes do not make a parent's cohabitation a determinative factor in visitation or custody disputes. *Id.* Moral misconduct alone is not sufficient to prohibit a parent from exercising such rights with their children, unless the misconduct is " 'so gross, promiscuous, open or coupled with other anti-social behavior as to directly affect the physical, mental, economic and social well-being of a child....' " *Id.* (quoting, *Humphrey v. Humphrey*, 888 S.W.2d 342, 346 (Mo.App. E.D.1994)). The court's primary consideration in determining custody or visitation is the best interests of the children. *Id.* "While a court can consider a parent's sexual or moral conduct to determine its detrimental effect on the mental, physical, economic or social well-being of a child, such conduct does not make a parent *ipso facto* unfit for visitation ...." *Id.* at 801. "The effect of cohabitation, like any other factor, must be determined on a case-by-case basis, always with the purpose in mind of determining the best interests of the children." *Id.* at 800.

As a result, the appellate court reversed the trial court's judgment restricting father's visitation and custody with daughter because it found it was an abuse of its discretion to make the father's cohabitation with his girlfriend dispositive of its determination and that on the facts presented, the restriction was against the weight of the evidence. *Id.* at 801. The court reversed and remanded for retrial of the entire visitation provision, as well as

the issues of custody and support, "with the understanding that the cohabitation of [father] with [girlfriend], while a factor which may be considered along with the other evidence, it is not a bar to custody [or visitation] by [father]." *Id.*

In *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 340 (Mo. banc 1998), Mother contested the trial court's restrictions on her visitation rights. Specifically, the trial court's restriction stated that the children could not be "in the presence of 'any person known by [J.A.D.] to be lesbian or known by [J.A.D.] to be one who engages in lesbian sexual activity . . .' except for a person named in the order who is described as a 'long time friend of the children.'" *Id.* In addition, the trial court's judgment provided that during visitation periods the children are prohibited from being in the presence of "'any other female, unrelated by blood or marriage, with whom [J.A.D.] may be living.'" *Id.* The Supreme Court reasoned that because "the latter restriction would apply to any woman whose presence or conduct might not be harmful to the children[, t]he judgment . . . is reversed and remanded, and the trial court is directed to limit the conditions to apply only to those individuals whose presence and conduct may be contrary to the best interests of the children." *Id.; see also, Parker v. Parker,* 918 S.W.2d 299, 300 (Mo.App. E.D.1996) (reversing and remanding the trial court's judgment restricting visitation where there was "no finding that visitation would endanger the physical health or impair the emotional development of the children" nor was there any evidence in the record to support an implicit finding of physical endangerment or impairment to emotional development nor any evidence "to show Mother's activities had any effect on the children."); *Poole v. Poole,* 977 S.W.2d 940, 940 (Mo.App. S.D.1998) (reversing the trial court's judgment restricting father's visitation rights because there was no evidence showing that "[f]ather's activities had any [e]ffect on the children.")

■ In the case before us, the trial court restricted Mother's overnight visitation with RLG to when Mother's partner, Ty Ruth, does "not occupy a bedroom with [Mother] under the same roof with the minor child." However, the trial court did not make any finding pursuant to Section 452.400.1, RSMo 2000, "that [overnight] visitation [with Mother when she occupied a bedroom with her partner, Ty Ruth,] would endanger the child's physical health or impair his emotional development." While it may be inferred from the nature of the restriction on Mother's overnight visitation with RLG that the trial court was concerned about RLG's exposure to Mother's relationship with her partner, Ty Ruth, the record before us does not support an implicit finding that Mother's relationship and cohabitation with Ty Ruth endangered RLG's physical health or impaired RLG's emotional development. Therefore, the trial court's judgment is reversed and remanded for a new trial on the issue of visitation. Also, because it is not clear how much weight the trial court gave to Mother's relationship and cohabitation with Ty Ruth in making its custody determination, this finding is also reversed and remanded for new trial. In addition, because these issues directly impact the trial court's award of child support, and again, because it is not clear what impact Mother's relationship and cohabitation with Ty Ruth had on the trial court's decision not to award Mother retroactive child support and necessaries, these issues are also reversed and remanded for retrial.

■ Additionally, in this case, the trial court awarded Father the federal tax dependency exemption for the 2002 tax year. Mother argues the trial court lacked juris-

diction and therefore erred as a matter of law in awarding this exemption to Father when Mother had custody of RLG during the 2002 tax year under the pendente lite order and when federal law exclusively governs issues of tax credits.

The trial court has broad discretion in determining child support, including the award of a tax exemption. *Hoffman v. Hoffman*, 870 S.W.2d 480, 484 (Mo.App. E.D.1994). The trial court's power, however, must be in accordance with the Internal Revenue Code. *Id.* Generally, under 26 U.S.C. Section 152(e), unless there is a contrary court order, the primary custodial parent is entitled to the tax exemption for a dependent child. *Id.* The non-custodial parent can claim the child as a tax deduction under the following exceptions: (1) if the custodial parent signs a written declaration that such custodial parent will not claim such child as a dependent and the non-custodial parent attached such declaration to the tax return; (2) "if a qualified pre–1985 instrument between the parents provides that the non-custodial parent shall be entitled to the deduction and the non-custodial parent provides at least $600 per year per child in support;" or (3) "if a multiple support agreement is in effect." *Echele v. Echele*, 782 S.W.2d 430, 440 (Mo.App. E.D. 1989).

Here, in its judgment, the trial court "noted [Father's] payments to keep appropriate day care available for [RLG] while the child was kept from him, and it is specifically ordered th[at] he have the 2002 state and federal tax dependency exemptions for the child." Mother argues this award was erroneous because she was the primary custodian of RLG in 2002 under a pendent lite order. However, Mother does not cite us to this document and the only such order we see in the record is the "Temporary Order of Custody," dated July

22, 2002, which states that "[p]ending final ruling of the court, the parties will alternate custody of the child for 4 overnight periods of time." It is not clear from the record before us the precise child custody arrangement that the parties had in place from January of 2002 until the court's "Temporary Order of Custody" dated July 22, 2002. As such, it is not clear to us that Father was the primary custodian of RLG such that he should be awarded the tax dependency exemption for that year. In addition, there is no evidence that any of the above exceptions applied. Therefore, the trial court's judgment awarding Father the tax dependency exemption for 2002 is reversed and the issue is remanded back to the trial court for it to make a proper finding as to RLG's primary custodian in 2002.

REVERSED AND REMANDED.

LAWRENCE G. CRAHAN and PATRICIA L. COHEN, JJ., concur.