Kimberly O'CONNELL, Individually and as Next Friend for David Horton, A Minor Child, Appellant,

v.

Jon P. HORTON, Respondent.

No. WD 71056.

Missouri Court of Appeals, Western District.

June 15, 2010.

Brent L. Winterberg, Kansas City, MO, for Appellant.

Jason A. Davey, Kansas City, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Chief Judge.

Ms. Kimberly O'Connell (Mother) appeals the judgment of the trial court modifying a custody arrangement between herself and Mr. Jon Horton (Father). Mother argues that there was insufficient evidence to support the judgment and that the trial court erred in placing a restriction on her parenting time. We affirm as modified herein.

## Factual and Procedural Background

Mother and Father were not married; they had a child, E.D.H. (Son), in 1998. Later, Mother married Mr. Timothy O'Connell (Stepfather). Father had a child with Ms. Amy Horton (Stepmother); Father and Stepmother got married. Father subsequently adopted Stepmother's two children.

Mother and Father submitted a parenting plan concerning Son to a district court in Kansas, which approved it. The plan[1] provided that during the school year Son would reside with Mother and spend most weekends with Father. During the summer, Mother and Father alternated weeks.

Thereafter, Mother and Stepfather had some marital problems; Mother began dating Cody Hines (Boyfriend). Mother became pregnant with Boyfriend's child. Mother registered the Kansas parenting order in Missouri and filed a motion to modify custody, visitation, and support of Son. Shortly before Mother and Boyfriend's child was born, Boyfriend moved in with Mother. Stepfather moved to the lower level of the home.

Father filed a motion to modify custody, visitation, and support, contending that modification was necessary because of the changed circumstances of Mother's new baby and Mother "presently residing with her current husband and a man who is not her husband but is the man she alleges to be the father of her baby." Mother and Stepfather subsequently filed for divorce, and Stepfather moved out of the home.

A hearing on the motions to modify was held in March 2009. Son was ten years old, received A's and B's in school, and played several sports. Father coached his basketball and football teams. According to Stepfather, Son suffered from asthma, allergies, and significant stomach pains for several years that his doctors felt were caused by anxiety. Sometime in 2006 Son began taking medication and in 2008 Son began receiving counseling.

Stepfather and Son had a close relationship; Stepfather, Boyfriend, and Mother testified that Stepfather stayed in the home to maintain Son's stability. Stepfather and Mother had agreed Stepfather could continue to spend time with Son during Mother's parenting time. Boyfriend testified that he planned to create a family with Mother and their child but that he and Mother had no current plans to marry. His relationship with Son was "[v]ery good. Still growing and loving."

Father testified that the relationship between Son and Stepmother's children was very good; the oldest of her children was eleven at the time of trial. Father stated that he did not see signs of significant sickness in Son and that Son wanted to be a football player. Father further claimed Mother was uninvolved with Son and that Son's time at Mother's had been spent primarily with Stepfather. Stepmother testified that Son and her children had a "very good" relationship but that her relationship with Son was "strained slightly because [Mother] does not like me and [Son] knows that."

The trial court adopted Father's parenting plan. It included: Father would have sole legal custody, Father's residence would be designated as Son's address, Mother and Father would retain joint physical custody but Son would now reside at Father's house with Mother receiving parenting time every other weekend and on Wednesday nights. The order also contained a "condition" that Mother could not have overnight guests during her parent-

---

1. There was dispute at trial whether the plan offered by Mother was complete or accurate. However, no other plan was provided as evidence by Father.

ing time "to whom she is not related by blood or marriage." Mother appeals, raising four points.

## Standard of Review

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Buschardt v. Jones*, 998 S.W.2d 791, 795–96 (Mo.App. W.D. 1999). We affirm the judgment of the trial court "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 796. We assume that the trial court was motivated by the child's best interests, and we defer to its credibility determinations. *Id.* We also give the trial court more deference in child custody determinations than in other matters. *Id.* Consequently, we affirm the trial court's decision unless we are "firmly convinced that the child's welfare requires some other disposition." *Id.*

## Legal Analysis

In the first point, Mother argues the trial court erred in granting Father's motion to modify because its statutory findings under section 452.375.2 were against the weight of the evidence. Section 452.410 [2] provides that a trial court "shall not modify a prior custody decree unless ... it finds ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Thus, before ordering a modification in custody, the trial court must find a change in circumstances, and determine that modification is in the child's best interests. *Bomar v. Kurtz*, 951 S.W.2d 657, 660 (Mo.App. W.D.1997).

Here, the trial court did not specify its finding of "changed circumstances." Rath-

er, it stated that there had been changed circumstances "as set forth below." The trial court then looked to section 452.375.2, which directs the court to use all relevant factors in determining the child's best interests, including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state;

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

*Bomar*, 951 S.W.2d at 660.

In consideration of these factors, the trial court found Father's parenting plan to be in the best interests of the child. The trial court stated in its findings that: Father was better able to satisfy Son's needs for a frequent, continuing, and meaningful relationship with both parents; Mother's past living situation was "totally inappropriate for [Son]"; "Mother is more willing to allow [Stepfather] to co-parent than she is [Father]"; "[t]here is this unusual and inappropriate relationship ...

**2.** All statutory references are to RSMo 2000 and the Cumulative Supplement 2009.

wherein mother has placed [Stepfather] above [Father] and placed her personal enjoyment above the child's with her behavior"; "all these circumstances surrounding the mother [are] unsatisfactory for [Son]"; "Mother's examples to the son are not in the child's best interests" because "Mother has one child out of wedlock" and a pending dissolution action; Mother's "living circumstances" were "very inappropriate for this child"; and consequently, "Mother has by her conduct required that father be the residential custodian of this child."

■ Based on the factors cited in its judgment, we must infer that the "changed circumstances" found by the trial court were Mother's divorce, new baby, child's development of anxiety and depression at Mother's home, and Boyfriend moving into the home. These findings are sufficient to support a change in circumstances. In reviewing whether modification was necessary to serve Son's best interests, we agree with Mother that some of the trial court's statutory findings do not support its conclusions. Specifically, no weight should be accorded to Mother's pregnancy out-of-wedlock, especially in light of the fact that both Mother and Father had children out-of-wedlock.

■ However, "[b]ecause the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence," we affirm the judgment "under any reasonable theory supported by the evidence." *Id.* at 659 (internal quotation marks and citation omitted). The record shows that there was evidence to support the trial court's finding that modification of custody was in Son's best interest. Son had a very good relationship with his stepsiblings and half-sibling at Father's home, and the home was a stable and positive environment. Father's residence contrasted significantly with Mother's transitional and unstable home situation. Evidence showed that Son's time in Mother's household had largely been spent with Stepfather. Further, Son's anxieties and stresses manifested in Mother's home; whereas in Father's home, Son rarely became ill. While the record shows both parents to be concerned and committed to the rearing of Son, we are not firmly convinced that Son's welfare requires some other disposition. Mother's first point is denied.

■ In the second point, Mother contends the trial court erred in modifying custody because there was no nexus shown between her sexual conduct and harm to Son. In her third point, Mother similarly argues that the trial court erred because moral disapproval of co-habitation is insufficient to deprive a parent of custody. She relies on *Bomar*, which holds that co-habitation cannot serve as the basis for modifying custody unless directly affecting "the physical, mental, economic and social well-being of the child.'" *Id.* at 661 (quoting *Humphrey v. Humphrey*, 888 S.W.2d 342, 346 (Mo.App. E.D.1994)). We do not address these arguments, however, because absent the trial court's moral condemnation or approval of Mother's sexual conduct or co-habitation decisions, as discussed *supra*, there was sufficient evidence supporting the trial court's finding of a change of circumstances and that Father's parenting plan was in Son's best interests. Points two and three are consequently denied.

■ In the final point, Mother contends that the trial court erred in ordering a parenting plan that restricted her parenting time because it made no finding that her parenting time endangers Son's physical health or emotional development. Specifically, in its judgment the trial court declared that: "SPECIAL CONDITIONS:

Mother shall not have overnight, adult guests in her home during her periods of parenting to whom she is not related by blood or marriage."

■■■■ Section 452.400.2(1) provides that "the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." This endangerment-impairment standard requires a greater showing for placing a restriction on visitation than that for a modification of custody: the trial court must "make the finding that the child's emotional development will be impaired or that the child is in physical danger." *Gould v. Dickens*, 143 S.W.3d 639, 643 (Mo.App. E.D.2004). If the trial court fails to make an explicit finding supporting the restriction, we will infer its finding from the restriction placed on the visitation. *Id.*

At the time of the hearing, residing in Mother's home were Mother, Boyfriend, new baby, and Son (Stepfather had recently vacated the home). The trial court made no explicit finding that Boyfriend's presence alone would endanger Son's physical health or impair his emotional development. Boyfriend is the father of Mother's baby, and testimony established that Mother and Boyfriend are attempting to build a family. We see no basis in the record for a finding of potential harm to Son from Boyfriend's presence.

■■■■ While the trial court disapproved of Mother based on the *past* living condition of Stepfather and Boyfriend in Mother's home, "[p]ast conditions are material only to the extent that they clarify and cast light on existing conditions." *Bomar*, 951 S.W.2d at 662 (internal quotation marks and citation omitted). Moreover, moral misconduct is not the issue, but whether the conduct is detrimental to the child's welfare. *Gould*, 143 S.W.3d at 643.

Absent any showing of harm, the trial court's own moral judgment of either past or present conditions cannot serve as the basis for the restriction. *See id.*

Because the record does not support that future danger to Son's physical health or emotional development required a restriction in Mother's parenting time, the trial court abused its discretion. Mother's fourth point is granted.

### Conclusion

The trial court's judgment is amended to strike the entry of the "special condition." *See* Rule 84.14. We affirm the judgment in all other respects.

WELSH and WITT, JJ., concur.