Kennie VON HOLTEN, Respondent,

v.

Melia ESTES, Now Colgan, Appellant.

WD 79770

Missouri Court of Appeals,
Western District.

OPINION FILED: MARCH 14, 2017

Joshua P. Jones, Osceola, MO, Counsel for Respondent.

James C. Johns, Clinton, MO, Counsel for Appellant.

Before Division One: James E. Welsh, Presiding Judge, Anthony Rex Gabbert, Judge, Edward R. Ardini, Jr., Judge

Anthony Rex Gabbert, Judge

Melia Colgan (Mother) appeals the circuit court's judgment regarding Kennie Von Holten's (Father) Motion to Modify parenting time and child support and Mother's Counter Motion to Modify custody, parenting time, and child support. Mother asserts eleven points on appeal. In her first through seventh points she contends that the trial court erred in finding a custodial arrangement designating Father's residence as the child's residence for mailing and educational purposes and awarding Father the majority of the available parenting time to be in the child's best interest because that determination was predicated on the court's erroneous findings that the statutory custody factors set forth in Section 452.375.2(1)-(6) and (8)[1] either favored or did not disfavor such arrangement. In her eighth point Mother

---

1. All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the current Cumulative Supplement, unless otherwise noted.

contends that the court erroneously applied the law in not granting Mother sole legal custody of the child. In her ninth point Mother contends that the court erred in failing to appoint a guardian ad litem for the child. In her tenth point on appeal Mother contends that the court misapplied the law in adopting a parenting plan that failed to comply with the requirements of Section 452.310(8). In her eleventh point on appeal Mother argues that the court erred in modifying Father's child support obligation. We affirm in part and reverse and remand in part.

### Factual and Procedural Background

Mother and Father were never married. Their son (child) was born on July 18, 2004. On October 4, 2006, the circuit court entered a Judgment in response to Father's Petition for Declaration of Paternity and Legal Custody. The Judgment reflected Mother's and Father's agreement with regard to child custody and parenting time, and the court's own determination with regard to child support. The child was two years old at the time of the agreement. The parents agreed to share joint physical custody of the child. The agreement provided that the child would reside with Mother except during Father's specified parenting time. Father was to have parenting time with the child every other weekend from 6:00 p.m. Friday until 8:30 a.m. Monday, as well as every Wednesday immediately following Father's weekend visitation, and every Monday immediately preceding Father's weekend visitation. When the child reached kindergarten age, the parents agreed that Father was to have parenting time with the child every other weekend from the time school recessed on Friday (or 6:00 p.m. whenever school was not in session) until 6:00 p.m. Sunday, as well as every Wednesday immediately following Father's weekend visitation and every Monday immediately preceding Father's weekend visitation, from the time school recessed until 8:00 p.m. Father was also to have six weeks of summer parenting time with the child. Father was ordered to pay $534 per month child support.

In 2009, Mother informed Father of her intent to relocate from Clinton to Osceola. Mother married in October of 2009 and was desiring to relocate with her husband. Father moved to modify the original judgment and the parents ultimately stipulated to a parenting plan which was incorporated into a 2010 Modification Judgment. Pursuant to this Judgment the parents continued to share joint legal and joint physical custody of the child. Mother was allowed to relocate her residence to Osceola, and Mother's address was designated as the child's address for mailing and educational purposes. Father agreed to pay $432 per month child support and the cost of health insurance for the child. Mother agreed to pay for the child's tuition at Lowry City Christian School (LCCS). The agreement designated that the child would attend LCCS "or the public school where the mother resides." It was agreed that the child would attend LCCS "at least through the end of the first grade."

LCCS does not hold classes on Fridays. When the child was in school at LCCS, it was agreed that Father's parenting time would be every other weekend from Thursday at 6:00 p.m. until Sunday at 6:00 p.m. On Father's weekend off, he was to have parenting time with the child from Thursday after the child's dismissal from school until 6:00 p.m. Friday. Father was to also have the child for six weeks each summer. The agreement provided for a different arrangement if the child attended a school with a five-day week. While at LCCS, Father would have the child between 183 and 186 overnights per calendar year. If the child attended a five-day per

week school, Father's parenting time would decrease to between 109 and 112 overnights per calendar year.

The child attended LCCS through the third grade. In the summer of 2014, Mother spoke with Father regarding starting the child in school at Osceola starting the child's fourth grade year. Father objected. Father corresponded with Osceola school officials, prior to and after his conversation with Mother, advising those officials that he did not want his son enrolled in school at Osceola.

On August 5, 2014, approximately one week before LCCS classes started, Mother enrolled the child in school at Osceola. Father expressed displeasure to both Mother and the Osceola school officials regarding this decision, indicating his belief that a change in schools was to be the joint decision of both parents. Father text messaged Mother on August 6 and 7 regarding the issue. Mother did not respond. LCCS started its school year approximately ten days before Osceola and during Father's parenting time. Father sent the child to LCCS when LCCS's school year began. Mother then sent the child to school in Osceola upon its commencement and the child attended there for the duration of the 2014-2015 school year.

On September 11, 2014, Father filed a motion to modify the 2010 Modification Judgment alleging that it was in the child's best interest to modify that judgment as to parenting time and child support. Father's proposed parenting plan recommended that the parties continue to share joint legal and physical custody of the child but that the residential designation of the child for educational and mailing purposes be changed from Mother's residence to Father's. Father resides in the Cole Camp school district. Father recommended that Mother have parenting time with the child on alternating weekends, six weeks during the summer, and alternating holidays.

On January 16, 2015, Mother filed a Counter-Motion to Modify alleging a substantial and continuing change in circumstances. Mother asked the court to award her sole legal custody of the child, with continued joint physical custody, and to designate Mother's residence as the child's residence for educational and mailing purposes. She proposed that Father have parenting time on alternating weekends and five weeks during the summer.

During the child's 2014-2015 school year in Osceola, it was discovered that the child was at least a year and a half behind his peers academically and that he might have a lower than average IQ. In May of 2015, Dr. McClimans of the Osceola school district spoke with the parents about having the child attend summer school in both Osceola, where Mother resides, and Cole Camp, where Father resides. Consequently, the child attended the Cole Camp summer school program which started prior to the Osceola program. The Osceola summer program was to begin during Father's custodial time and Father conferred with McClimans about Father hiring tutors for the child in lieu of the child attending the second summer school. McClimans agreed that this would be acceptable as long as documentation was provided regarding the services the child received so that the child could advance to the next grade.

Trial was held on the modification motions on July 28 and 29, 2015. The child was interviewed by the court *in camera* pursuant to Section 452.385. Father's evidence at trial included testimony from Mother's mother, a sister-in-law of Mother, the elementary school principal at Osceola, acquaintances of Father, and Father. Mother's evidence included testimony from the superintendent of Osceola

schools, acquaintances of Mother, and Mother.

On January 29, 2016, the circuit court issued a Judgment in the matter. Mother filed a timely Motion for Reconsideration and Motion to Amend Judgment. The Motion to Amend Judgment alleged that the court had failed to make and include written findings required by Section 452.376.6. The trial court denied Mother's Motion for Reconsideration, but sustained Mother's Motion to Amend and on April 25, 2016, issued an amended Judgment Entry. The amended Judgment awards the parties joint legal and physical custody of the child. Father's residence is designated as the child's residence for mailing and educational purposes. Mother is awarded parenting time on alternating weekends from 6:00 p.m. on Friday through 6:00 p.m. on Sunday, and six weeks in the summer. Major holidays are divided. Father is to have the child when Mother does not. Neither parent is ordered to pay child support. Mother appeals.

## Standard of Review

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* We assume that the trial court was motivated by the child's best interests in custody decisions, and we defer to its credibility determinations. *O'Connell v. Horton*, 313 S.W.3d 702, 705 (Mo. App. 2010). We will affirm the trial court's decision unless we are " 'firmly convinced that the child's welfare requires some oth-

er disposition." ' *Id.* (quoting *Buschardt v. Jones*, 998 S.W.2d 791, 795-96 (Mo. App. 1999)). The party challenging the judgment has the burden of proving error. *Beckham v. Beckham*, 41 S.W.3d 908, 911 (Mo. App. 2001).

## Discussion

### Points I-VII

Mother's first through fifth and seventh points on appeal all allege that the court's determination that it was in the child's best interest to designate Father's residence as the child's residence for mailing and educational purposes and to award Father the majority of the available parenting time is against the weight of the evidence. Mother's sixth point on appeal alleges that the court's determination is not supported by substantial evidence.

While we appreciate Mother's efforts to avoid multifarious points on appeal by separating her claims by individual Section 452.375.2 factors, our review requires consideration of the evidence in relation to all of the factors and the entire record as applicable to the child's best interest. *In re Paternity of D.A.B. by D.A.B.*, 902 S.W.2d 348, 355 (Mo. App. 1995) ("We do not disturb custody awards unless it is clear from the entire record that the trial court abused its discretion or unless we are convinced the child's welfare dictates a disposition different than that made by the trial court.")

All of the factors listed in section 452.375 (and others) are relevant to custody decisions generally, but every factor may not be relevant to resolving every individual motion. What makes a particular factor relevant to a particular motion is the evidence.... [T]he statutory factors serve only to frame the debate regarding the child's best inter-

est but do not purport to supplement or supplant that central requirement.

*Soehlke v. Soehlke*, 398 S.W.3d 10, 20 (Mo. banc 2013). Consequently, while we address Mother's contentions regarding the individual factors, we combine Mother's first through seventh points into one discussion.[2]

The circuit court's judgment reflects that the court considered all of the Section 452.375.2 factors that are required to be considered by a court when reaching a decision as to the best interest of the child in a disputed custody matter. The factors set forth in Section 452.375.2, Mother's allegations of court error regarding those factors, and this court's review of those contentions are set forth below:

Section 452.375.2 (1): The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties.

With regard to this factor the court concluded that, while the evidence reflected that each party had failed to communicate with the other regarding the child and had exhibited an inability to communicate in general, and pointedly questioned Mother's future willingness to communicate with Father regarding the child, the court expressed hope that the "different circumstances" provided in the court's parenting plan would encourage a "better relationship between the parents." The court found Father's belief that the parties could work in a co-parenting role if he were provided custody for educational and mailing purposes to support the court's ultimate decision to grant Father's request for joint legal and physical custody instead of Mother's request for sole legal custody.

Mother agrees that there was a breakdown in communication between the parents and contends that the court's failure to award her sole custody went against the court's own findings regarding the lack of communication between the parties. We disagree. The evidence, in the light most favorable to the court's judgment, supports the court's conclusion that a breakdown in communication had occurred between the parties causing the court to question the workability of joint legal custody. However, the court awarded joint legal custody after determining that the court's Parenting Plan would foster more communication between the parents. In light of the court's other findings and credibility determinations, had the court chosen to award sole legal custody to one party it would have likely been to Father. The record does not reflect, however, that the breakdown of communication was so extreme that the court's determination that joint legal custody was in the best interest of the child was against the weight of the evidence. Father testified that, after Mother's deposition was taken in the case and she was questioned regarding her lack of communication, the level of communication from Mother greatly increased. Father testified that he believed that he and Mother could co-parent effectively and Mother testified that she has always been willing to co-parent with Father.

Section 452.375.2 (2): The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to

---

2. We note that many of Mother's arguments ask this court to reweigh the evidence that was before the trial court. This is not within our province. We "do not reweigh the evidence, even if the evidence may have supported another conclusion." *Morgan v. Mor-* *gan*, 497 S.W.3d 359, 372 (Mo. App. 2016). "If evidence does not clearly preponderate in favor of either parent, we will reverse the trial court's award only when there has been an abuse of discretion." *Id.* (internal quotation marks and citation omitted).

actively perform their functions as mother and father for the needs of the child.

■ With regard to this factor, the court found that both parents professed a willingness and ability to perform their parental functions. The court expressed a belief that the court's modified custody arrangement would "foster a greater spirit of willingness for the parties to cooperate with each other to ensure that each maintains their relationship with the minor child." Evidence at trial was that Father was highly involved in every aspect of the child's life. Father testified that, as he is not married and has no other children, the child is the primary focus of his life. Father testified that, as a realtor, his work schedule is flexible and allows him to be readily available to the child. The child plays several sports and Father testified that he attends all games and practices and has helped coach. School officials testified that Father had been very involved in all aspects of the child's education. Although Mother contends that she is more able and willing than Father to act and perform parental functions, the court did not reach this conclusion and, in light of the record and our deference to the trial court's credibility determinations, we find no fault with the court's conclusions regarding this statutory factor.

Section 452.375.2 (3): The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests.

■ With regard to this factor the court found that the court's Parenting Plan "will allow the child to continue to maintain the relationship with half-siblings in [Mother's] household." Although Mother disputes this and contends that the court's parenting arrangement will adversely impact significant relationships that the child has with family members within Mother's house-

hold, it is clear that the court considered the variety of relationships available to the child and determined that the court's Parenting Plan would best allow for a wider range of important relationships being fostered with the child. The court specifically found that Mother had made an effort to sever the relationship between the child and the child's maternal relatives after a disagreement with those individuals about their continued friendship with Father. The court found that the custody arrangement developed by the court would allow the relationship between the maternal relatives to continue for the child. In light of the record, the court's findings in this regard are not against the weight of the evidence.

■ Section 452.375.2 (4): Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent.

With regard to this factor, the court suggested that Mother had failed to do this in the past by using others for overnight care for the child when Father could have provided that care. The court determined that the court's Parenting Plan, in conjunction with the sharing of joint legal and physical custody, would encourage a greater effort by Mother to ensure that Father is actively involved with the child. While Mother contends that no evidence exists that Mother denied or interfered with Father's parenting time or relied on others to provide the child's care, when asked by the court if he ever spent overnights somewhere other than Dad's house when he was with Mother the child stated: The only time I spend nights away with— my Mom's house is if I—she's going somewhere with anyone, because she—she used to have Nana when she finished. So—or if it was planned, that's the only time I really stayed the night with other people."

Hence, the record is not completely devoid of evidence that the child spent nights elsewhere while in Mother's care.

Section 452.375.2 (5): The child's adjustment to the child's home, school, and community.

Regarding this factor, the court indicated that, based on the substantial evidence presented at court which included testimony from the child as well as from individuals representing the school in each of the parents' school districts, moving the child to Father's school district would not be detrimental to the child as he had already developed "numerous friends and relationships in that school district." Mother disagrees and contends that the child was well-adjusted to Mother's home and his Osceola school and altering his school would have a negative impact.

Osceola school officials testified that, because of funding restraints in Osceola, the Cole Camp school district had more services to offer the child to address his particular educational needs. The child was interviewed by the court in chambers. The child indicated that if he could pick any school he wanted to attend, he would attend school at Cole Camp because "Cole Camp's—I think is going to help me learn more stuff." When asked, he denied that Father had talked to him about how Cole Camp might help him and indicated that a teacher at Cole Camp had told him that he/she hoped that he attended there, and that he wanted to attend there. He stated that if he went back to Osceola schools, "Then I would feel sad for a little bit." The child clearly understood that attending school at Cole Camp would mean spending more time with Father but less time with his Mother, sister and brothers. The child indicated that he would visit them, however, similar as to how he had switched back and forth between parents before.

Section 452.375.2 (6): The mental and physical health of all individuals involved, including any history of abuse of any individuals involved.

■■■ With regard to this factor, the court noted that there was no history of abuse directed toward the child, but mentioned an angry outburst by Mother towards the child's maternal grandmother. The record reflects that in January of 2015, the child was visiting his maternal grandmother and cousins when Mother appeared at the residence and got into a loud argument with the grandmother. Although Mother argues on appeal that the child was not present and that there is no evidence that the incident affected the child, she testified at trial that he was present in the home but not in the same room. Mother's sister-in-law testified that the sister-in-law's daughter was present in the home during this event and called the sister-in-law while it was happening. The sister-in-law could hear loud arguing in the background. About five minutes later, the sister-in-law's children returned to the sister-in-law's home upset and crying. Given the evidence that other children present in the home were adversely affected by the incident, we find that the court was entitled to presume that the incident was not positive for the child, particularly where it involved both his mother and maternal grandmother.

Section 452.375.2 (7): The intention of either parent to relocate the principal residence of the child.

With regard to either party's intention to relocate the principal residence of the child, the court indicated that this factor was insignificant to the court's custody determination as neither party had expressed an intent to relocate.

Section 452.375.2 (8): The wishes of a child as to the child's custodian.

With regard to the child's wishes regarding custody, the court indicated that its interview with the child and other evidence supported the custody arrangement and Parenting Plan adopted by the court. Although Mother contends that the child's responses to the court's inquiries were only "superficial and frivolous," we cannot agree. While the child did express that summer school in Cole Camp was "fun," the court asked the child pointed questions about his understanding of what attending school in Cole Camp would mean with regard to time spent with parents and siblings. The child clearly understood that attending Cole Camp schools would mean spending less time with his mother and half-siblings. The evidence reflects that the child expressed no preference for either parent or either parent's residence and merely expressed a preference for a particular school. His communications with the court reveal that he is well-adjusted and comfortable in both parents' homes and that both homes provides an emotionally safe environment.

Upon review of the record and the court's application of the evidence to the Section 452.375.2 factors, we do not find the court's custody determination, residential designation, or Parenting Plan to be against the weight of the evidence or, as relevant to Mother's claim in her sixth point on appeal, unsupported by substantial evidence. Points one through seven are denied.

### Point VIII

In her eighth point on appeal, Mother contends that the trial court erred in failing to modify the custodial arrangement to grant Mother sole legal custody of the child, arguing that the court erroneously applied the law in awarding joint legal custody because such award is incon-sistent with the court's factual findings and the requirements of joint legal custody. We find no error.

As discussed above, the court concluded that a breakdown in communication had occurred between the parties and this caused the court to question the workability of joint legal custody. Nevertheless, the court awarded joint legal custody after determining that the court's Parenting Plan would foster more communication between the parents. While Mother correctly asserts that a breakdown in communication and cooperation alone is sufficient to constitute a change of circumstances warranting the modification of legal custody, she points to no authority supporting her contention that modification from joint to sole custody is mandatory with findings such as the court made here.[3] Here, the court gave a reasoned explanation for its decision to continue joint legal custody and for why it found joint legal custody to be in the child's best interest. We find no misapplication of the law. Point eight is denied.

### Point IX

In Mother's ninth point on appeal she contends that the court erred in failing to appoint a guardian ad litem for the child because the allegations of abuse and neglect in Father's pleadings required such. We disagree.

Section 452.423.2 provides that, "[t]he court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged." Appointment of a guardian ad litem is mandatory only when allegations of child abuse or neglect are raised in one or both parties' pleadings, or when sufficient evidence is offered at trial that, if believed, shows actual abuse

3. *See Mehler v. Martin,* 440 S.W.3d 529, 536 (Mo. App. 2014).

or neglect occurred. *Soehlke v. Soehlke*, 398 S.W.3d 10, 15 (Mo. banc 2013).

> [W]hen an appellant seeks a new trial based on a claim that the trial court erred in applying section 452.423.2, Rule 84.13(b) prohibits the appellate court from granting a new trial unless the appellant clearly demonstrates both that the result of the trial court's failure to appoint a guardian was that the child's interest was not adequately protected at trial, and that this resulted in the trial court imposing modifications that were not in the child's best interest.

*Id.* at 15-16. Section 452.423 leaves the final construction of "abuse" and "neglect" "to the experience and judgment of Missouri's trial courts[.]" *Id.* at 17. Our Missouri Supreme Court has stated that "[t]hese courts need no further guidance to be able to distinguish extraordinary allegations that involve real acts of child abuse or neglect from ordinary allegations that— no matter how vitriolic or *ad hominem* they may be—do not indicate that the child has suffered such harm." *Id.* Consequently, "[i]f a party challenges the court's conclusion as to whether the allegations were sufficient to mandate the appointment of a guardian, that conclusion will be reviewed only for an abuse of discretion." *Id.* at 18.

Father's pleadings alleged, among other things, that Mother "fails to maintain an appropriate and healthy environment for the minor child," "inappropriately disciplines the minor child," "fails to take adequate steps to assure the child has appropriate medical and dental care," is "subject to emotional mood swings and outbursts that do not provide a healthy environment for the minor child to reside in," "does not provide sufficient academic assistance to the minor child," and "provides poor hygiene habits for the minor child." We find these allegations vague in nature and find

that they allege no harm that occurred to the child as a result of Mother's alleged actions or inactions. Mother points to no evidence adduced at trial that supports these allegations as constituting abuse or neglect, and we find none in reviewing the record. We note that, neither Mother nor Father requested appointment of a guardian ad litem based on these allegations.

The court did not abuse its discretion in failing to *sua sponte* appoint a guardian ad litem based on Father's pleadings. Point nine is denied.

### Point X

■■■ In her tenth point on appeal, Mother contends that the circuit court misapplied the law in adopting a parenting plan that failed to comply with the statutory requirements of Section 452.310(8), arguing that the court's Parenting Plan fails to account for President's Day, Martin Luther King, Jr. Day, and the child's birthday.

■■■ Section 452.310.8(1) requires a parenting plan to include a specific schedule that addresses, among other things, major holidays, school holidays for school-age children, and the child's birthday. "The trial court is not free to disregard any of the enumerated events." *Wennihan v. Wennihan*, 452 S.W.3d 723, 737 (Mo. App. 2015). "The failure to account for such holidays in the parenting plan constitutes reversible error." *Id.*

Here, the trial court indirectly addressed President's Day and Martin Luther King, Jr. Day in its judgment. The Parenting Plan provides that, Mother will have the child every other weekend during the school year and, when the child does not have school on Monday of the weekend in issue, then Mother's weekend shall end at 6:00 p.m. on such Monday. Hence, the court's Parenting Plan recognizes that the

child will have some Monday's off from school and provides a schedule for those Mondays off. Both President's Day and Martin Luther King, Jr. Day always fall on a Monday.

Mother did not ask the court to specifically address President's Day and Martin Luther King, Jr. Day by name in a motion to amend the judgment. "Rule 78.07(c) requires that all allegations of error relating to the form or language of the judgment must be raised in a motion to amend the judgment in order to be preserved for appellate review." *Rocking H. Trucking, LLC v. H.B.I.C.*, 463 S.W.3d 1, 9 (Mo. App. 2015). As Monday holidays for the child are provided for in the court's judgment, we find that Mother's claims on appeal go to the form or language of the judgment and, therefore, are not preserved.

We find, nevertheless, that the court erred in failing to include, pursuant to Section 452.310(8)(c), the child's birthday in its written schedule detailing the custody, visitation and residential time for the child with each party. Point ten is granted to the extent that remand is necessary to add the child's birthday to the parenting time schedule in the Parenting Plan.

## Point XI

In her eleventh point on appeal, Mother contends that the trial court misapplied the law in modifying Father's child support obligation by failing to determine the presumed correct child support amount under Section 452.340, Rule 88.01 and Form 14, in that the court neither referenced the Form 14 calculations submitted by the parties nor placed its own Form 14 calculations into the record. Father acknowledges that the court failed to determine a presumed child support amount, but contends that, because Father requested no support and would have been the one awarded support under the court's Parenting Plan, the error is harmless.

To preserve this claim for review, Mother was required to bring this issue to the attention of the trial court in a post-trial motion to amend the judgment. *Crow v. Crow*, 300 S.W.3d 561, 566 (Mo. App. 2009). Rule 78.07(c) requires allegations that the court failed to make statutorily required findings be raised in a motion to amend the judgment. If not raised, such claims are waived. *Id.* Rule 78.07(c) encompasses allegations of error relating to a trial court's failure to make findings required by 88.01. *Crow*, 300 S.W.3d at 566. "[T]he requirement that a trial court determine and find for the record the presumed correct child support amount pursuant to Form 14 is specifically mandated by Rule 88.01[.]" *Id.* As Mother did not allege in her motion to amend the judgment that the court failed make required Rule 88.01 findings, Mother has waived this claim.[4] Point eleven is denied.

## Conclusion

We do not find the trial court's custody determination, residential designation, or Parenting Plan to be against the weight of the evidence or, as relevant to Mother's claim in her sixth point on appeal, unsupported by substantial evidence. We conclude that the court did not misapply the law by awarding joint legal custody to the parties or by failing to appoint a guardian ad litem to represent the child. However, we find that the court failed to include,

4. We gratuitously note that, even if Mother had preserved this claim, she could not be deemed aggrieved by the court's decision to award no child support because, given the custody arrangement, Mother would have likely been ordered to pay child support to Father had the court ordered payment of a presumed child support amount. The parties acknowledge, however, that Father expressly waived child support at trial.

pursuant to Section 452.310(8)(c), the child's birthday in its written schedule detailing the custody, visitation and residential time for the child with each party. We remand this matter to the circuit court to do so. In all other respects, the trial court's judgment is affirmed.

All concur.